[No. 5130. Decided March 31, 1905.]

## JOSEPH B. DABNEY et al., Appellants, v. JAMES SMITH et al., Respondents.[1]

MORTGAGES—SATISFACTION—CONVEYANCE TO MORTGAGEE—DEED ABSOLUTE UPON FAILURE TO REDEEM—CONTRACT FOR REDEMPTION—SALES. A deed of mortgaged premises from the mortgagors to the mortgagees was intended as a sale and not as a mortgage, where, after five years default in the payment of interest and taxes, the mortgage notes were surrendered and the mortgage cancelled, in consideration of the deed of the premises, and the parties entered into a written agreement providing that the deed should be absolute unless the mortgagors redeemed within a specified time by the payment of the principal and all interest and taxes, less the amount of rents collected, and where, near the expiration of the period of redemption, the mortgagors offered to pay $2,000 on the contract in case the period of redemption was extended, which offer was refused, and the conduct of the parties indicated no claim that there was any existing enforcible debt, and the mortgagors waited for three years before offering to redeem, during which time the grantees had made valuable improvements; since clear and convincing proof is required to show a deed absolute in form to have been intended as a mortgage.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered January 27, 1904, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to redeem lands from a mortgage. Affirmed.

*Ben Sheeks* and *J. C. Cross,* for appellants.

*J. A. Hutcheson,* for respondents.

MOUNT, C. J.—This action was brought by appellants to redeem certain lands now held by respondents. From a decree adjudging the respondents to be the owners of the lands, and not mortgagees, this appeal is prosecuted.

[1]Reported in 80 Pac. 199.

The facts are substantially as follows: On the 30th day of September, 1890, the appellants were the owners of the westerly one-half of lot 2, in block 44, all of lot 6, in block 45, and all of lot 6, in block 51, in the city of Aberdeen. On that date appellants executed a mortgage to respondents on said real estate, to secure the payment of a promissory note for $4,000, bearing interest at the rate of eight per cent per annum, and due fifteen months thereafter. Appellants failed to pay said note or the interest, at maturity, and respondents, in order to protect their security, thereafter were required to pay delinquent taxes on the mortgaged premises to the amount of $559. On the 18th day of October, 1897, when the note and mortgage were more than five years past due, and no payments had been made thereon, appellants transferred the above described real estate by warranty deed to the respondents for an express consideration of $6,000. Five days later, viz., on October 23, 1897, and as part of the same transaction, respondents executed and delivered to the appellants a contract, a copy of which is as follows:

"This Memoranda Witnesseth, That whereas Joseph B. Dabney is indebted to James Smith in the sum of four thousand nine hundred and ninety and 33-100 dollars, and that said amount is secured to James Smith by mortgage on the following described real estate situate in the county of Chehalis and state of Washington, to wit: The westerly half of lot No. two (2) in block No. forty-four (44), lot No. six (6) in block No. forty-five (45) and lot No. six (6) in block No. fifty-one (51), all in the original plat of Aberdeen, and

"Whereas at the request of James Smith, and in consideration of certain benefits to be derived by Joseph B. Dabney, a deed has been executed by Joseph B. Dabney and Louise E. Dabney to James Smith conveying all the before described real estate, delivery and acceptance of which deed is hereby acknowledged.

"Now, therefore, we, James Smith and Mary A. Smith hereby agree and bind ourselves, in consideration of the giving of the deed before mentioned and conveying of the property therein described to us, to cancel the said indebtedness, and all indebtedness of whatsoever nature and kind against the said Joseph B. and Louise E. Dabney. That at any time on or before June 1st, 1900, we will convey said property to Joseph B. Dabney and Louise E. Dabney, or their heirs or assigns, on the payment to us of the amount of the note this day cancelled and returned to the said Dabney, plus the interest already accumulated on said note and plus the taxes, amounting to five hundred fifty-nine and 12-100 dollars, already paid by the said James Smith on said property August 16, 1897, and plus the taxes that may be paid hereafter on said property during the existence of this contract, together with eight per cent interest from date of each tax payment, less all amounts of rent collected or that may be collected by the said James Smith on the before mentioned property, with eight per cent interest on each several amount of rent from the time it is collected until the redeeming of said property by the said Joseph B. Dabney and Louise E. Dabney, their heirs or assigns.

"That the said James Smith shall have possession of the property for the collection of rents thereon, beginning on the 1st day of November, 1897.

"That during the existence of this contract the said Joseph B. and Louise E. Dabney shall have the right to regulate the amount of rent that each tenant of said property shall pay, and shall have the right to build on any of the unoccupied ground of the above described property; providing, that before the putting up of any building upon said ground, the said James Smith shall be secured against any labor or material liens for such buildings, and that such buildings shall be put up wholly at the expense of the said Joseph B. and Louise E. Dabney, their heirs or assigns, but the rents therefrom shall be collected by the said James Smith and applied in the liquidation of the indebtedness against the property in the same manner as the rents from the buildings now on said property.

"The said James and Mary A. Smith hereby agree and bind themselves to not transfer or convey any of said property during the existence of this contract, to any other than Joseph B. and Louise E. Dabney, their heirs or assigns.

"In case of failure on the part of the said Joseph B. Dabney and Louise E. Dabney, their heirs or assigns, to redeem said property as before mentioned on or before the 1st day of June, 1900, then and in that case the before mentioned deed from Joseph B. and Louise E. Dabney to James Smith shall be absolute, and this contract shall be null and void and of no force and effect.

"In witness whereof, we have this 23d day of October, 1897, put our hands and seals in duplicate. (Signed.) James Smith, Mary A. Smith."

At the time this contract was delivered, respondents satisfied and cancelled of record the mortgage above referred to, and delivered to appellants the note named. Appellants thereafter did not redeem the said property within the time named, and made no payments of any kind thereon. When the time was about to expire, appellants offered to make a payment of $2,000, provided the time would be extended, which offer was refused by respondents. After June 1, 1900, respondents treated the deed theretofore given as absolute, and the property as their own, and made improvements thereon. Some time in June, 1903, about three years after the contract had expired according to its terms, appellants demanded an accounting from respondents, and tendered the sum of $5,000 to redeem the said property, which was refused by respondents. Thereupon this action was brought, alleging that the contract was a mortgage, and praying for an accounting of rents, and for a redemption upon the payment of the balance due.

The foregoing facts are not disputed. The appellant Joseph B. Dabney, however, testified that the sole object in making the deed to respondents was to continue the

mortgage and save taxation upon both the mortgage and the land. Respondents by their evidence denied that such was the purpose of the deed, but stated, in effect, that, because they were required to pay taxes both upon the mortgage and the land, that was one consideration which led them to accept the deed, but the real and most potent consideration was that they saw no prospect of ever getting more than the land in payment of the debt; and also that if they should foreclose their mortgage—which both parties agreed they were threatening to do—the foreclosure proceedings would take about two years to acquire title in fee; and that they consented to give the time named in the contract in order to avoid a lawsuit, but that the purpose and intent of the transfer was as stated in the contract and not otherwise.

We are satisfied that, under the facts in this case, the transaction was clearly a sale and not a mortgage. The transaction was based upon a mortgage previously existing. The mortgage and notes were cancelled and surrendered. The respondents took possession of the property, and paid the taxes and street improvements. When the time was about to expire within which appellants were required to redeem, they sought an extension thereof by offering to pay upon the contract, and not upon any debt. The conduct of both parties, after the contract, indicated no claim by either of an existing, enforcible debt. The proof, we think, conclusively shows that the value of the property at the time the deed was given was less than the amount due on the mortgage. Appellants waited for three years after the time provided in the contract, before they offered to redeem. Within that time respondents had made valuable improvements on the property; and the value thereof had materially advanced. The rule of law governing this case is stated, at § 326, Jones, Mortgages (6th ed.), as follows:

"When the transaction is shown to have been based upon a pre-existing debt, the question to be settled is, whether the intention of the parties was to cancel that debt or to secure it. This is a question of fact, for the determination of which not only the negotiations had at the time of the conveyance, but also the subsequent acts of the parties in relation to it, are to be considered. The mere fact that there was a debt at the time is not conclusive that the conveyance was a mortgage for its security. It can hardly be said that it raises the presumption of a mortgage, though the courts have generally manifested a disposition to construe all conveyances coupled with a stipulation for a reconveyance at a future day as mortgages. But whatever presumption of this kind there may be, it is readily repelled by any facts showing that the debt was surrendered and cancelled at the time of the conveyance. The burden is then upon the grantor to show that the deed is not to have effect according to its terms. If the transaction was based upon a mortgage previously existing between the parties, and the mortgage notes are given up and no other evidences of debt are taken in their place, and the mortgagor was credited with the amount of the mortgage notes upon his making an absolute conveyance of the mortgaged land to the mortgagee, the presumption is strong, if not conclusive, that such absolute conveyance was not intended to operate as a mortgage. It is wholly improbable that a creditor, already having a mortgage to secure his demand, should take another mortgage in the form of an absolute conveyance of the same property, for the same debt, without any apparent advantage."

Upon the character of proof in such cases the same authority, at § 335, says:

"One who alleges that his deed in absolute form was intended as a mortgage only, is required to make strict proof of the fact. Having deliberately given the transaction the form of a bargain and sale, slight and indefinite evidence should not be permitted to change its character. The proof must be clear, unequivocal, and con-

vincing. The fact that the grantor understood the transaction to be a mortgage is not alone sufficient to prove it to be so."

The following cases from this court are in point, both upon the law and the facts: *Dignan v. Moore,* 8 Wash. 312, 36 Pac. 146; *Swarm v. Boggs,* 12 Wash. 246, 40 Pac. 941; *Reed v. Parker,* 33 Wash. 107, 74 Pac. 61; *Conner v. Clapp,* 37 Wash. 299, 79 Pac. 929.

Under the law as therein announced and applied to the facts in this case, we are clear that the judgment of the lower court is right. It is therefore affirmed.

DUNBAR, HADLEY, and FULLERTON, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.