[No. 8491.   Department Two.   February 15, 1910.]

## LEWIS A. GASAWAY, *Respondent*, v. FRED A. BALLIN *et al.*, *Appellants*.[1]

TENANTS IN COMMON—TRUSTS—VENDOR AND PURCHASER.   Where the holder of a title to lands agrees, by a written contract, to convey a one-half interest to another, upon payment of specified sums constituting one-half of the original purchase price, they are not tenants in common, and the title holder is not a trustee for the other, their rights being fixed by the written contract.

VENDOR AND PURCHASER—CONTRACTS—RESCISSION BY VENDOR.   The holder of the legal title to lands may by notice abrogate a contract whereby he had agreed to convey a one-half interest to another on the payment of specified sums, where the other party violated the provisions of the contract requiring him, in the case of a sale of lots, to pay one-half of the money received to the title holder and to apply the other half upon an indebtedness secured by mortgage on the property.

LIMITATION OF ACTIONS—ACCRUAL—VENDOR AND PURCHASER—CONTRACT TO CONVEY.   Where the rights of the parties are fixed by a written contract requiring a grantee to reconvey a one-half interest to the grantor on the payment of specified sums, the grantor's right of action on the contract accrues when the grantee gives a written notice abrogating the contract for the default of the grantor, and is barred six years thereafter.

Appeal from a judgment of the superior court for Kitsap county, Yakey, J., entered June 7, 1909, upon findings in favor of the plaintiff, after a trial on the merits, in an action for an accounting.   Reversed.

*Gill, Hoyt & Frye* and *R. L. Blewett*, for appellants.

*S. G. Murray*, for respondent.

RUDKIN, C. J.—On or about the 23d day of August, 1901, the plaintiff, Gasaway, informed the defendant Fred A. Ballin that a deed in his favor for 68 lots in Terrell's addition to the town of Charleston, in Kitsap county, was lying in escrow in one of the Seattle banks awaiting the payment

[1]Reported in 106 Pac. 905.

of the purchase price of $750, and that he did not have the funds necessary to enable him to take up the deed. After examining the property, it was agreed between the parties that Ballin would pay $510 for an undivided one-half interest in the lots. The consideration was paid and Gasaway gave Ballin a receipt for the amount, in which the former agreed to procure title to the lots and convey an undivided one-half interest to the latter. Ballin then returned to his home in Portland, Oregon, and immediately informed Gasaway by letter that he would advance $250 additional, to make up the balance of the original purchase price if necessary, the amount advanced to be repaid from the first sales of lots. Ballin heard nothing more from Gasaway for about a month, and received no answer to his letters. He then went to Charleston and Seattle and located Gasaway after considerable difficulty, only to be informed that the latter had lost a good part of the funds advanced, through an investment in a coal option, and was unable to take up the deed, which was still in the bank. Ballin then compelled Gasaway to return to him the $200 left out of the $510 theretofore advanced, and required him to raise the sum of $550 by mortgage on the lots to pay the balance of the purchase price. Arrangements were finally made with the Robertson Mortgage Company to loan $550 on the lots, taking an assignment of certain land contracts held by Gasaway as additional security. When the parties came to close up the loan, however, $50 was held out of the loan to cover overdue payments on the land contracts, so that only $500 was realized on the mortgage. Ballin advanced the additional $250 necessary to make up the original purchase price, and $8 to pay certain bank charges. Gasaway then deeded the lots to Ballin, and the latter and his wife in turn executed a contract in favor of the former wherein it was agreed that Ballin and wife would convey an undivided one-half interest in the lots to Gasaway on the following conditions:

"First. That said party of the second part shall have

paid in full that certain mortgage made, executed and delivered this day by said party of the second part to William B. Robertson, in the sum of Five Hundred Fifty Dollars ($550).

"Second. That said party of the second part shall have paid to said parties of the first part the sum of Two Hundred Fifty Dollars ($250) now due from said party of the second part to said parties of the first part; and

"It is further agreed that said party of the second part may proceed to sell said lots, or any of them, at a price not less than Fifty Dollars ($50) each net, and that out of the proceeds of the sale of said lots said party of the first part herein shall receive one-half of the net proceeds of such sale, and said party of the second part will apply his portion of the selling price of said lots, to wit, one-half thereof, to the liquidation of the aforesaid obligations in the following order, to wit:

"First, in the payment of said mortgage of Five Hundred Fifty Dollars ($550) as fast as the proceeds are realized from such sales, and

"Secondly, in the payment of said sum of Two Hundred Fifty Dollars ($250) to said parties of the first part herein, and when said obligations are paid in full then the said parties of the first part will make, execute and deliver to said party of the second part as aforesaid, a warranty deed to an undivided one-half of the above described lots that are then unsold."

Soon after the execution of this contract, Gasaway entered into a contract for the sale of four of the lots and received $50 on account of the purchase price. He paid $10 of this sum to the Ballins, but failed and refused to pay over or account for the residue or to apply any portion of it on the mortgage indebtedness as agreed. For this failure on the part of Gasaway, the Ballins terminated the contract by written notice on November 18, 1901. Nothing whatever transpired between the parties from that date until the commencement of the present action, six and one-half years later. The Ballins in the meantime paid all taxes levied against the property and paid off the Robertson mortgage. Soon after the revocation of the contract, Gasaway induced a friend,

Kennedy by name, to take an assignment of the Robertson mortgage, and after the assignment, the personal security put up by Gasaway was released, leaving the indebtedness to stand against the property, secured only by the mortgage. There is little conflict in the testimony, but where such conflict exists we have no hesitation in adopting the testimony of the Ballins, for two reasons; first, because the court below accepted it; and second, because we deem it the more credible. From the foregoing statement it will be seen that Gasaway has not invested a cent in the property, but on the contrary is a gainer by the transaction to the amount of $400; $310 lost on the coal option, $50 of the mortgage loan applied on his personal debts, and $40 derived from the proceeds of the sale of lots.

The present action was instituted by Gasaway for an accounting and for an undivided one-half interest in the property after such accounting. The complaint proceeded upon the theory that the plaintiff and defendants were tenants in common of the lots. The court accepted this theory and gave judgment in favor of plaintiff, from which this appeal is prosecuted.

From the foregoing statement it must be apparent that the respondent and appellants are not tenants in common of the property. A court will never assume or hold that one person holds title to property in trust for another, or as security for a debt, where the rights of the parties have been agreed upon and are fixed by a definite specific written contract. *Dignan v. Moore,* 8 Wash. 312, 36 Pac. 146; *Swarm v. Boggs,* 12 Wash. 246, 40 Pac. 941; *Reed v. Parker,* 33 Wash. 107, 74 Pac. 61; *Conner v. Clapp,* 37 Wash. 299, 79 Pac. 929; *Dabney v. Smith,* 38 Wash. 40, 80 Pac. 199.

Whatever right or interest the respondent had or acquired in the lots in controversy arose out of the written contract above set forth. That contract was abrogated by the appellants in November, 1901, for good and sufficient cause, and a right of action accrued in favor of the respondent at that

time, if a right of action he ever had. He did not attempt to enforce his rights then, because he had already realized $400 out of the transaction, and could hope for nothing further unless the property should bring at least $50 more than the original contract price. But now the situation has changed; the property has increased in value three or four fold; and after the lapse of nearly seven years, he asks the aid of a court of equity to enable him to reap where others have sown. To grant such relief at this late day, under the circumstances disclosed by this record, would be inequitable in the extreme. The right of action in favor of the respondent, if any such ever existed, was upon a written contract, and accrued more than six years prior to the commencement of this action. The cause of action is therefore barred by the statute of limitations, but if it were not, a court of equity would find little difficulty in disposing of the case adversely to the respondent on other equitable principles.

The judgment is reversed with directions to dismiss the action.

MOUNT, PARKER, DUNBAR, and CROW, JJ., concur.