[S. F. No. 8102. In Bank.—February 13, 1920.]

## ROYAL INSURANCE COMPANY, etc., Respondent, v. CALEDONIAN INSURANCE COMPANY, etc., Appellant.

[1] APPEAL—ACTION ON REINSURANCE POLICY—AVAILABILITY OF SPECIAL DEFENSE—AMENDMENT OF COMPLAINT—DECISION NOT LAW OF THE CASE.—In an action upon a policy of reinsurance, the decision on a former appeal that a special defense, a demurrer to which had been erroneously sustained by the trial court, was available to the defendant, is not the law of the case, where upon the return of the case an important change in respect to the facts of the case was created by an amendment of the complaint.

[2] FIRE INSURANCE—REINSURANCE—INDORSEMENTS ON POLICY.—A clause in a standard form policy of fire insurance providing that liability for reinsurance shall be as specifically agreed hereon gives a controlling degree of importance to the terms of whatever indorsements are placed upon a policy of reinsurance by the immediate parties thereto, and in the case of any inconsistency between the terms of such an indorsement and the terms of the general form, the latter in so far as they are inconsistent must give way.

[3] ID.—INDORSEMENT ON POLICY OF REINSURANCE—ADJUSTMENT AND SETTLEMENT BY ORIGINAL INSURER—LIABILITY OF REINSURER.—An indorsement on a policy of reinsurance that the policy is subject to the same risks, valuations, conditions, and adjustments as are or may be taken by the reinsured, and loss, if any, thereunder is payable *pro rata* with the reinsured and at the same time and place, makes a voluntary, *bona fide* settlement by the original insurer binding on the reinsurer, where there is no question as to the liability of the original insurer and the reinsurer upon their respective policies up to the time of the occurrence of the disaster out of which their respective liabilities are claimed to have arisen.

[4] ID.—ACTION ON REINSURANCE POLICY—BAD FAITH IN ADJUSTMENT OF LOSS—ABSENCE OF EVIDENCE—DISREGARD BY COURT.— In an action on a policy of reinsurance, the court is entitled to disregard the issue of the bad faith of the plaintiff in making its adjustment of the loss, in directing the jury to find a verdict in plaintiff's favor, where no evidence is presented on such issue.

[5] ID.—RUBBER STAMP REINSURANCE CLAUSE—EFFECT OF.—The rule declared by section 1651 of the Civil Code that where a contract is partly written and partly printed, or where part of it is written or printed under the special direction of the parties, and with a special view to their intention, and the remainder is copied

from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form, applies to a reinsurance clause stamped upon the face of the policy by a rubber stamp, and gives such clause predominance over a fallen building clause contained in the policy.

[6] ID.—PREDOMINANCE OF REINSURANCE CLAUSE—EFFECT OF CLAUSE IN POLICY AS TO INTERESTS OTHER THAN INSURED.—A reinsurance clause stamped on a policy of reinsurance by a rubber stamp is given predominance over a fallen building clause in the policy, by a printed condition contained in the policy to the effect that as to anyone other than the insured having an interest, "the conditions hereinbefore contained" shall apply in the manner "written upon, attached or appended hereto."

[7] ID.—ACTION ON REINSURANCE POLICY—EVIDENCE—FALLING OF BUILDING BEFORE FIRE—FAILURE TO SHOW RELEVANCY.—In an action on a reinsurance policy, it cannot be claimed that error was committed in rejecting evidence to the effect that the building had fallen before the fire, where it was not made plain that the defendant was counting on such evidence, which in the state of the record was immaterial, as merely a link in the chain of evidence to show bad faith on the part of the plaintiff in settling with the insured in violation of a supplemental agreement between the two insurance companies set out in the answer but not offered in evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

T. C. Van Ness, Jr., Peter F. Dunne and H. B. M. Miller for Appellant.

Jas. Alva Watt, Goodfellow, Eells, Moore & Orrick and Redman & Alexander for Respondent.

WILBUR, J.—This cause was transferred to this court after decision by the district court of appeal of the first district, because of the contention of the appellant that the case having heretofore been heard on appeal (20 Cal. App. 504, [129 Pac. 597]), the second decision departed from the law of the case as established on the first appeal. On a more extended examination of the record than was possible in con-

sidering the petition for rehearing, we are satisfied with the opinion of the district court of appeal written by Justice Richards, and adopt the same as the opinion of this court. It is as follows:

"This is an appeal from a judgment in plaintiff's favor for the sum of $4,595.19, alleged to have become due upon a policy of reinsurance.

"The facts of the case are briefly these: The plaintiff insured a stock of goods, furniture, and fixtures belonging to J. C. Johnson & Co. and contained in a building situated on the northwest corner of First and Minna Streets in the city and county of San Francisco, to an amount not exceeding the sum of seventeen thousand five hundred dollars. The policy which the plaintiff issued to the insured contained a provision that if the building in which the insured property was located, or any part thereof, should fall except as the result of fire, 'all insurance by this policy on such building or its contents shall immediately cease.' After effecting this insurance the plaintiff reinsured its risk with the defendant herein in the sum of five thousand dollars. These two policies of insurance were as to their general provisions identical in form, and in each there is a printed provision which reads: 'Liability for reinsurance shall be as specifically agreed *hereon.*' Upon the policy of reinsurance at the time of its issuance by the defendant herein there was indorsed the following provision, viz.: 'This policy is subject to the same risks, valuations, conditions, and adjustments as are or may be taken by the reinsured, and loss if any thereunder is payable *pro rata* with the reinsured at the same time and place.' The insured property was destroyed in the earthquake and fire of 1906. A dispute arose between the plaintiff and J. C. Johnson & Co., as to whether or not said building or any part thereof had fallen prior to its destruction by fire. The plaintiff investigated this question under the stress of threatened litigation, and after considering much evidence *pro* and *con* in relation to it concluded to effect and did effect a compromise settlement of the claim of J. C. Johnson & Co. against it for $16,187.50, which sum the plaintiff paid and thereupon made claim aginst the defendant herein for its proportion of said amount. The defendant refused to pay said claim or any portion thereof, whereupon this action was commenced by plaintiff for its recovery.

"In the original complaint in this action the plaintiff pleaded the facts respecting the original insurance by it of the destroyed property, the reinsurance of its risk by the defendant, the destruction of the property by fire, the plaintiff's payment of the loss, its demand upon the defendant for reimbursement to the extent of its reinsurance policy, and the latter's refusal to pay. The answer of the defendant to this original complaint, after denials of liability, pleaded as a separate defense that before the occurrence of the fire a material and substantial part of the building in which the insured property was located had fallen from a cause other than fire, and that the liability of the defendant upon its reinsurance policy had thereby ceased. The plaintiff interposed a general demurrer to this special defense, which the trial court sustained, and judgment having been given in favor of the plaintiff, an appeal was taken to this court, the main question upon said appeal being that of the correctness of the ruling of the trial court in respect to said special defense. Said appeal was heard and decided by this court. (*Royal Ins. Co.* v. *Caledonian Ins. Co.*, 20 Cal. App. 504, [129 Pac. 597].) By its said decision the judgment of the trial court was reversed upon the ground of the court's error in sustaining the plaintiff's demurrer to said special defense. Upon the return of the case to the trial court the plaintiff applied for leave to amend its original complaint, and being granted such leave the plaintiff set up by way of such amendment certain additional facts going to show that the reinsurance clause which constituted the essential provision of the contract of reinsurance was superimposed upon the form of policy used for both contracts of insurance, and further setting forth the dispute which had arisen between plaintiff and the owners of the insured property as to whether any portion of the building had fallen before the fire, and as to the full investigation, compromise and settlement of such dispute. Upon the basis of these additional facts the plaintiff, upon the retrial of the cause, contended that the special defense which this court had held in the former appeal and upon the record then before it to be allowable, was no longer available to the defendant. The trial court, upon undisputed proof of the facts so averred in the plaintiff's amended complaint, so held, and directed a verdict in the plaintiff's favor

for the amount of its claim, and the case is now before us upon the defendant's second appeal.

[1]  "The first point urged by the appellant is that the former decision of this court constitutes the law of the case.

"We cannot give our concurrence to this contention.   Conceding that the former decision of this court was correct in holding that upon the record then before it the defense that the building or a portion of it had fallen before the fire would be available to the reinsurer under the terms of its policy, we are of the opinion that an important change in respect to the facts of the case was created by the amendment to the plaintiff's complaint, which change materially affected the law of the case as applicable to such changed state of facts.

"In order to rightly view this matter a brief consideration of these two policies of insurance in their relation to each other is required.   The original policy of insurance is in a form in common use in this state and is known as the New York standard form.   It contains numerous conditions and stipulations which are obviously applicable only to the relation existing between the original insured and his immediate insurer.   The same general form of policy was made use of in entering into the contract of reinsurance between the plaintiff and the defendant herein, but it is equally obvious that as to those conditions in this general form of policy which could only have application as between the owner and its original insurer they cannot have been intended to have any force or application as between the original insurer and its reinsurer.   This obvious condition intensifies the importance to be accorded to those phrases or clauses in or on the policy of reinsurance which have special reference to it and to the relation between the immediate parties to it; such, for example, as the clause printed in the general form providing that 'Liability for *reinsurance* shall be as specifically agreed *hereon.*'   [2]  By this clause a controlling degree of importance is given to the terms of whatever indorsement is placed upon the policy of reinsurance by the immediate parties thereto, and in case of any inconsistency between the terms of such indorsement and the terms of the general form, the latter in so far as they are inconsistent must give way.   Upon the policy of reinsurance in the instant case the following indorsement appears: 'This policy is subject to

the same risks, valuations, conditions, *and adjustments* as are or may be taken by the reinsured, and loss, if any, thereunder is payable *pro rata* with the reinsured and at the same time and place.' In determining the scope and meaning of the foregoing clause superimposed upon the terms of the original contract of insurance regard must be had to the purpose which such special agreements between the reinsured and reinsurer were intended to subserve. In the early case of *New York etc. Ins. Co.* v. *Protection Ins. Co.*, 18 Fed. Cas. 160, the purpose of such special agreements was quite clearly pointed out by Mr. Justice Story sitting as a circuit judge. In the absence of such agreements, says the learned justice, 'Nothing is clearer upon principle and authority than that in such case the reinsurers are entitled to make the same defense and to take the same objections which might be asserted by the original insurers in the suit upon the first policy. The consequence would seem to be that as no voluntary payment by the original assurers would be binding or obligatory upon the reinsurers, they are compelled to resist the payment and to require the proper proofs of loss from the assured in a regular suit against them so as to protect themselves by a *bona fide* judgment to the amount of the recovery against them under their reinsurance. It was to avoid this inconvenience and delay as well as peril that the French policies of reinsurance, as mentioned by Emerigon and Pothier, usually contain a clause allowing and authorizing the original insurers to make, *bona fide*, a voluntary settlement and adjustment of the loss which shall be binding upon the reinsurers (citing cases). This, of course, puts the whole matter within the exercise of the sound discretion of the party reassured whether to contest or admit the claim of the first assured.' Such being held to be the purpose of these superimposed agreements between the parties to reinsurance policies, the next question is as to whether this purpose is to be held to have been expressed in agreements in the substantial form of that before us in the instant case. A decision strongly in point upon this latter question is that of *Insurance Co. of New York* v. *Associated Mfg. etc. Co. of New York*, [70 App. Div. 69], 74 N. Y. Supp. 1083, affirmed in 174 N. Y. 541, [66 N. E. 1110], which involved a clause in a policy of reinsurance which provided that it was 'Subject to the

same risks, valuations, indorsements (except transfers of location) and conditions as the original insurance, and loss, if any, to be settled and paid *pro rata* with the reinsured and at the same time and place and upon the same conditions.' The property being destroyed by fire, the original insurer proceeded to investigate and adjust the loss, and having done so demanded the *pro rata* payment from its reinsurer, which being refused, resulted in said action. The same precise claim was there made by the reinsurer which is made in this case. The court in dealing with such claim said: 'We think that a proper construction of the contract of reinsurance fails to sustain this claim. The defendant agreed that the reinsurance should be subject to the same risks, valuations and conditions as the original insurance, and that the loss should be settled and paid *pro rata* with the reinsured and at the same time and place and upon the same conditions. In the absence, therefore, of fraud or bad faith on the part of the plaintiff, the defendant by the terms of its policy . . . is in no position to object to the mode of adjustment as made by the plaintiff. *When, therefore, the plaintiff had ascertained by a proper investigation* that it was legally liable to pay a certain amount to the railroad company under its contract, and such payment had been made, the defendant could not question the validity of the plaintiff's act unless it alleged and proved that the plaintiff had acted fraudulently or collusively to its injury. There is nothing to show, either by allegation or proof, that the plaintiff did not act in entire good faith in adjusting the loss and in making the payment which it did, and no reason is suggested why the defendant should not pay the plaintiff the sum which it agreed to by its contract of reinsurance, and for this reason the trial court properly directed a verdict for the plaintiff.'

"The case at bar presents an even stronger reason for the application of the principle, for the clause under construction here contains the word 'adjustments,' which was evidently inserted in the more recent forms of reinsurance contracts in order to make it clear that the adjustment and settlement of losses, when made by the original insurer after proper investigation conducted in good faith, should be binding upon the reinsurer.

"The rule as thus stated should, of course, be limited to cases where, as in the instant case, no question arises as to the liability of the original insurer and the reinsurer upon their respective policies up to the occurrence of the disaster out of which their respective liabilities are claimed to have arisen, and wherein the matter presented for adjustment is a disputed state of facts as to the origin or extent of the disaster. This will differentiate the case at bar from those cases upon which the appellant herein most strongly relies, as, for example, the case of *Firemen's Fund Ins. Co.* v. *Aachen etc. Ins. Co.*, 2 Cal. App. 690, [84 Pac. 253], which was a case wherein the original insurer had represented to its reinsurer that the original policy covered wheat in a certain warehouse, whereas in fact the wheat affected by the reinsurance was in another building, and the court properly held that the reinsurance policy was void because there was nothing to which it could attach, and hence nothing which could be affected by any adjustment or settlement made by the original insurer.

"In the case of *Commonwealth Ins. Co.* v. *Globe etc. Ins. Co.*, 35 Pa. St. 475, the original insurer undertook to hold its reinsurer liable for the loss of a vessel occurring on a different voyage from that for which it was originally insured, and the court again properly held that there must be a prior insurable interest to which the reinsurance can attach. **[3]** The difference between this line of cases and the case at bar is obvious, and in conclusion upon this branch of the case we are of the opinion that under the foregoing clause of the reinsurance contract, where both contracts of insurance were admittedly valid up to the time of the occurrence of the disaster out of which the claims of liability on the part of both arose, and where the only question requiring adjustment was the disputed fact as to whether or not a portion of the building in which the insured property was located had fallen before the fire, and where the original insurer had in good faith investigated such disputed state of facts, and after such investigation had made an adjustment of the loss, the reinsurer is bound by such adjustment, and may not reopen that question in an action against it for its *pro rata* liability for the loss upon its policy of reinsurance.

**[4]** "As to the appellant's contention that it raised the issue of the bad faith of the plaintiff in making its adjust-

ment of the loss, it is sufficient to say that no evidence is shown to have been presented upon this issue. The trial court was, therefore, entitled to disregard it in its direction to the jury to find a verdict in plaintiff's favor.''

In addition to the statements contained in the foregoing opinion on the law of the case it may be added that the special defenses contained in the defendant's answer, to which demurrer was sustained, specifically alleged that in the policy of reinsurance ''it is stipulated and agreed by and between said parties respectively that if the building mentioned in the policies of insurance, or any part thereof, should fall except as a result of fire, all insurance under said policies on said building or its contents should immediately cease, and defendant alleges the fact to be that prior to the occurrence of the fire in or upon said building, or in or upon the property insured or reinsured under said policies respectively, a material and substantial portion of said building had fallen from a cause other than fire, and that said building had fallen within the meaning of said provisions of said policies, and that said insurance had thereby and by reason thereof at the time of the fire mentioned in the complaint ceased and terminated.'' A similar allegation was repeated in the second separate defense set up in the answer. At the time of the trial on the former appeal the defendant admitted substantially all the allegations of the complaint, and being precluded from offering evidence in defense by reason of the sustaining of the demurrer to the separate defenses, judgment was entered in pursuance of the stipulated facts. Therefore, the opinion on the previous appeal not only reverses the judgment because of the erroneous ruling on the demurrer, but the appellate court properly assumed in its opinion that the fallen building clause was a part of the reinsurance policy. The construction placed upon the reinsurance policy resulted from an effort to reconcile the reinsurance clause concerning ''valuations,'' ''conditions,'' and ''adjustments'' with the fallen building clause admitted by the demurrer to have been a part of the reinsurance policy. In the amendments to the complaint, made after the reversal by the district court of appeal, the plaintiff pleaded the reinsurance contract, according to its contention as to its legal effect, while in the former complaint it had been set out *in haec verba* as an exhibit. Upon

the last trial respondent proved that the reinsurance clause was stamped upon the face of the policy by a rubber stamp. [5] This condition of the record not only emphasizes the significance of the word "hereon" in the phrase, "liability for *reinsurance* shall be as specifically agreed *hereon,*" but also brings to bear an additional rule of construction not available upon the record as presented on the previous appeal. This rule is contained in section 1651 of the Civil Code, which provides as follows: "Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, *and with a special view to their intention,* and the remainder is copied from a form originally prepared *without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form."* (Italics ours.) Another reason for the same conclusion, as to the predominance of the reinsurance clause, results from one of the printed conditions contained in the body of the reinsurance policy, as follows: "If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest *as shall be written upon, attached or appended hereto.*" Among "the conditions hereinbefore contained" was the fallen building clause. [6] As the interest of the insured in this case was that of an insuring company, this clause in effect provides that such condition shall apply in the manner expressed in the rubber stamp reinsurance clause. As was said in *Welch* v. *British American Assur. Co.,* 148 Cal. 223, [113 Am. St. Rep. 223, 7 Ann. Cas. 396, 82 Pac. 964], this provision "was intended to have the effect of preventing the conditions previously mentioned in the policy from applying to such interest, unless the condition should be again written upon, attached, or appended to the policy. No other reasonable meaning can be given to the language."

[7] It is urged by appellant that the court erred in rejecting evidence tendered by defendant to the effect that the

building had fallen before the fire. It is claimed that this evidence was relevant as one item of evidence in the chain tending to establish bad faith on the part of the respondent in settling and adjusting the claim of J. C. Johnson & Company. All of the facts concerning the adjustment were already before the court without conflict. It appeared therefrom that a claim had been made by the insured against the respondent, that this claim had been fortified by evidence. That the question of whether or not the building had fallen before the fire was one of the matters covered by the investigation of the respondent and by the evidence tendered by the insured, which included a photograph of the building afire and still standing, with the exception of some of the front wall. It was on this *bona fide* controversy that a settlement and adjustment were had and the money paid. In this condition of the evidence the mere effort to show that there was evidence available tending to prove that the building had fallen before the fire was of itself immaterial. It was not made plain to the trial court, nor in the appellant's opening brief, to the appellate court, that it was counting on this evidence as merely a link in the chain of evidence to show bad faith by showing a violation of a supplemental agreement between the two insurance companies set out in the answer of the appellant but not offered in evidence. This point was therefore correctly disposed of in the concluding paragraph of the opinion of Justice Richards heretofore quoted.

Judgment affirmed.

Lennon, J., Lawlor, J., Shaw, J., Angellotti, C. J., and Olney, J., concurred.

Rehearing denied.

All the Justices concurred.