[No. 22060. Department One. February 24, 1930.]

EMILY L. CLANCY *et al., Respondents,* v. ARVILLA TREMBLAY *et al., Appellants.*[1]

*John H. Roche,* for appellants.

*A. C. Shaw,* for respondents.

PARKER, J.—The plaintiffs Clancy commenced this action in the superior court for Pend Oreille county seeking a judgment canceling and terminating all rights of the defendants Tremblay as vendees under what is in legal effect a conditional sale contract for the purchase of a farm in that county from the Clancys as vendors. The cause, being of equitable cognizance, proceeded to trial before the court sitting without a jury, resulting in findings and judgment awarding relief to the Clancys as prayed for, from which the Tremblays have appealed to this court.

In April, 1926, the Clancys held a promissory note, executed by the Tremblays, evidencing a principal indebtedness of $1,400, and also a mortgage, executed

[1]Reported in 285 Pac. 453.

by them to secure the same, upon their farm in question. There was then unpaid of that indebtedness the whole of the principal. There was then past due and owing, incident to that indebtedness, accrued interest and also taxes paid by the Clancys upon the land to protect their security, amounting to $200, making the total indebtedness at that time $1,600. Had there been no default in the payment of interest or taxes, the principal would not have become due and payable until about two years thereafter; but this default gave to the Clancys the right to treat the whole indebtedness as then due, and to sue for recovery thereof and foreclosure of the mortgage. The Clancys were about to commence such a suit. Following negotiations looking to an amicable settlement, the parties entered into a contract in writing, all signing the contract, reading as follows:

"MEMORANDUM OF AGREEMENT, Made and completed this 24th day of April, 1926, by and between Emily L. Clancy and Peter Clancy, her husband, of Tiger, Washington, parties of the first part, and D. P. Tremblay and Arvilla Tremblay, his wife, of the same place, parties of the second part, witnesseth that,

"WHEREAS second parties herein, under date of January 9th, 1924, gave to Mrs. Peter Clancy (Emily L. Clancy) a certain mortgage for $1,400, on which mortgage interest is now in arrears, and on the premises covered thereby, the taxes are unpaid, and

"WHEREAS first parties might under the terms of said mortgage declare the same to be due, if they so desired and could foreclose same, and

"WHEREAS the parties desire to avoid foreclosure suit and first parties desire to give second parties a further opportunity to pay up said indebtedness and redeem and keep the property covered by said mortgage,

"Now THEREFORE, in consideration of the mutual promises, covenants and agreements, as hereinafter

contained and expressed, the parties hereto hereby agree as follows:

"1. Second parties will deed to Mrs. Emily L. Clancy, the lands described in said mortgage. Second parties will pay to first parties interest at the rate of 8 per cent per annum from this date upon the sum of $1,600 which is now due upon the mortgage herein mentioned. The first payment of interest amounting to $26.67, shall become due and payable July 9, 1926, and the sum of $64 shall become due and payable on the 9th day of each January and July hereafter until the principal shall be paid. Second parties will also pay promptly when due, all taxes hereafter to become due upon the lands described, and will pay same prior to the time that interest shall begin to run.

"The lands covered hereby are described as the (Here follows description of the land).

"2. Second parties shall have the privilege of paying the $1,600, the agreed purchase price, at any time. Upon payment of said sum, together with interest accrued thereon to date, and any other sums which first parties may have been obliged to pay on account of their further security, first parties will cause to be delivered to second parties, or on their order, a deed this day prepared and escrowed.

"3. The time limit on this agreement shall be a period of five years, and unless second parties shall have sooner redeemed and paid to first party the sums due as herein provided for, they shall forfeit any and all right, title and interest in and to the premises herein described. It being understood and agreed that the interest and taxes which they may have paid, prior to said expiration date, shall be considered as the reasonable and agreed value for the use and occupation of the premises in question. And in the event that second parties should fail or neglect to pay promptly all interest and taxes herein agreed to be paid, and should their default in such payment continue for a period of sixty days, then it is understood and agreed that first parties may cancel this contract, and repossess themselves of the premises hereinbefore described. Such forfeiture may be accomplished by written notice

thereof, mailed to second parties, or either of them at Tiger, Washington; notice shall be deemed complete from time of mailing.''

The Tremblays then executed and delivered to the Clancys a deed conveying title to the farm, in which deed there is this recital:

''Grantee herein named is mortgagee in mortgage given by grantors herein Jan. 9, 1924, recorded Vol. 7 of Mtges, page 230—the giving and acceptance of this deed being for purpose of releasing said mortgage and vesting title to land covered in mortgagee—grantee herein.''

The Clancys then duly signed and acknowledged a deed in terms conveying the land back to the Tremblays to be delivered to them if and when they should pay the agreed purchase price, interest thereon and taxes as stipulated in the contract for the sale of the land back to the Tremblays. This deed was not placed in escrow; that is, it was not placed in the hands of a third person, as the contract seemed to contemplate, but was retained in the possession of the Clancys, at all times ready for delivery when the conditions of the purchase contract should be fully complied with. The note evidencing the principal indebtedness and the interest thereon was then canceled and delivered to the Tremblays. The Tremblays remained in possession of the land.

The installment falling due July 9, 1928, was not paid at that time, nor within sixty days thereafter, though during that period the Tremblays were warned by the Clancys that the installment must be paid as required by the terms of the contract. Thereafter the Clancys gave to the Tremblays due notice of forfeiture and cancellation of the contract in the manner provided in the contract, which notice the Tremblays promptly

received, and thereafter on November 5, 1928, this action was commenced.

It is first contended in behalf of the Tremblays that the contract for their conveyance of the land to the Clancys and repurchase of it from them resulted in the rights of the Clancys remaining only that of mortgagees; that is, that the contract and conveyance amounted only to an extension of the time of the maturing of the indebtedness for which the mortgage was given; and that therefore the remedial rights of the Clancys remained and continued to be only the right of recovery of the indebtedness and foreclosure of the mortgage.

Looking alone to the recitals and agreements of the written contract, there may appear some ground for so arguing; but the following considerations, we think, clearly negative this contention: (1) There is no promise in the contract on the part of the Tremblays to pay the principal of the indebtedness. (2) There does seem to be in the contract a promise on the part of the Tremblays to pay future installments as interest on the $1,600 agreed repurchase price until paid, and future taxes levied upon the land; but that was not a promise to pay any indebtedness existing at the time of making the contract. Besides, whatever would be paid in compliance with that promise was in case of default to be "considered as the reasonable and agreed value for the use and occupation of the premises." (3) The note evidencing the indebtedness was canceled and surrendered to the Tremblays. (4) The deed of conveyance executed and delivered by the Tremblays to the Clancys expressly recited that

". . . The giving and acceptance of this deed being for the purpose of releasing said mortgage and vesting title to land covered in mortgagee—grantee herein."

Thus, it seems to us that the parties gave to the recitals and provisions of the contract a construction plainly evidencing their intent to consider the original debt as being satisfied and discharged by the execution of the deed. The cancellation and surrender of the note would ordinarily be sufficient evidence of an intent to cancel the indebtedness. If the mortgage by its language also evidenced a promise to pay the debt, as well as evidencing security therefor, as to which this record does not advise us, then the recitals of the deed above quoted plainly evidence the release and satisfaction of the mortgage as effectually as a release executed in usual form.

The following of our decisions, among others, we think, clearly call for the conclusion that neither the debt nor the mortgage continued in existence after the making of the repurchase contract and the conveyance made by the Tremblays to the Clancys, and that therefore the Clancys' remedial rights were not recovery of the debt and foreclosure of the mortgage, but the cancellation of the contract by which the Tremblays had the conditional right to repurchase the land from the Clancys. *Reed v. Parker,* 33 Wash. 107, 74 Pac. 61; *Dabney v. Smith,* 38 Wash. 40, 80 Pac. 199; *Neeson v. Smith,* 47 Wash. 386, 92 Pac. 131; *Boyer v. Paine,* 60 Wash. 56, 110 Pac. 682; *O'Reilly v. Tillman,* 111 Wash. 594, 191 Pac. 866.

It is further contended in behalf of the Tremblays that they made timely tender of the amount of the installment due on July 9, 1928, which remained unpaid more than sixty days thereafter, before the Clancys gave notice of forfeiture and their election to cancel the sale contract because of such default. This presents only questions of fact as to which the evidence is in conflict, though we agree with the trial judge that the evidence preponderates against this contention.

564

We reach this conclusion after a careful reading of all the evidence. It seems to us unnecessary to review it in this opinion.

The judgment is affirmed.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.