[Civ. No. 11980.   First Dist., Div. Two.   July 17, 1942.]

ALICE MAUD DAVIS, Respondent, v. A. L. STEWART, Appellant.

Leander L. James, Lionel Browne, Charles H. Sooy and Charles D. Sooy for Appellant.

Martinelli & Gardiner and Herbert Chamberlin for Respondent.

STURTEVANT, J. — This is the second appeal by the defendant Stewart in the above entitled action. The first appeal terminated in the decision entitled *Davis* v. *Stewart,* 31 Cal. App. (2d) 574 [88 P. (2d) 734]. On the second trial many items of evidence were introduced. The issues made by the complaint, the answer, and the replication thereto were tried and copious findings were made thereon. No finding is now attacked but the defendant relies on the doctrine of "the law of the case."

The property is located a short distance south of the city of San Rafael in Marin county. It is across from and slightly north and west of the "Y" formed by the intersection of Highway 101 and the San Quentin-San Rafael Highway. Specifically it is referred to and identified in the transcript

as parcels numbers 1, 2 and 3. Parcel No. 1 was acquired by J. E. Davis from the estate of Frederick Schuemann by deed dated October 25, 1929. No improvements were then on the property. Improvements have since been added, including buildings housing a service station with living quarters, an auto court with ten cabins and living quarters for the operator, a store, another service station, a cafe, and in the rear a frame shack and some long sheds. Parcel No. 2 was acquired by the same grantee from the same grantor by deed dated October 25, 1929. No improvements have been placed on it. Parcel No. 3 was acquired by J. E. Davis from William Siebe and wife by deed dated November 2, 1931. On that parcel two buildings have been constructed at a cost of $2,500 each.

The defendant A. L. Stewart sold and delivered to J. E. Davis a quantity of dirt used for filling. The first sale was for $1,688 evidenced by a promissory note dated October 1, 1931, payable April 1, 1932, at 6 per cent. The second sale was in the sum of $1,062. The two sales amounted to $2,750. J. E. Davis and Alice M. Davis executed to Stewart a note for $2,750 payable $50 monthly including 6 per cent interest. To secure said note they executed a trust deed covering parcel No. 3 only. The trust deed provided for and secured additional indebtedness if incurred. Later Stewart delivered additional filling in the sum of $4,038. The total deliveries then amounted to $6,788 and were secured by said trust deed. A computation shows that said obligation, according to the terms of the note, would not have been paid until twenty years had expired. Notwithstanding the terms of said contract Stewart filed a materialman's lien on July 18, 1932, for $6,788 on parcels 1 and 3. Prior to that date parcels 1 and 2 had been conveyed to plaintiff, Alice M. Davis, and prior to July 18, 1932, plaintiff had executed to J. E. Davis a general power of attorney. At said time a number of encumbrances were of record. A debt against parcel 1 in the sum of $3,250 in favor of Bank of America was secured by a deed of trust dated May 4, 1931. An obligation in favor of A. Bonaiti in the sum of $1,250 was secured by a deed of trust against parcel No. 1. Against parcel No. 3 an obligation in favor of William Siebe to secure the payment of $1,000 was secured by a trust deed dated October 31, 1931. Against the same property stood the trust deed above mentioned in favor of the defendant Stewart in the sum of $6,788.

There also stood against said lot a judgment secured by an attachment in favor of William R. Cole for the sum of $1,300.

When the defendant filed said lien J. E. Davis protested claiming that the promissory note and trust deed would defeat the materialman's lien. The defendant's attorney advised him to the same effect. Thereupon the defendant proposed that the actual facts and actual agreements regarding the dirt be concealed and that the lien be foreclosed and in that manner all encumbrances would be undercut and eliminated. Davis rejected the proposal. However he was willing that the lien be foreclosed, that time for payment for the dirt be accelerated, that the parcels be sold to Stewart at the foreclosure sale, *if* Stewart would pay the claims of other creditors and *if* the property could be redeemed upon payment of the aggregate indebtedness to Stewart. This was agreeable to Stewart. He had his attorney prepare a written statement of such agreement. That tentative agreement was produced at the trial. It purported, to cover parcel 3 only. The document was signed by this plaintiff and by this defendant. Almost immediately both Mr. and Mrs. Davis were served with summons in an action to foreclose the mechanic's lien. On September 10, 1932, Davis addressed a letter to Stewart claiming that the agreement just mentioned did not state the oral understanding between the parties. Stewart replied admitting the fact and asking for a suggestion. The tentative agreement was therefore abandoned and a new agreement was written consolidating and refinancing all the debts owed by the Davises.

Before taking up the new instrument it is helpful to note that at the time it was written the Davises had invested $19,000; that they had rejected offers respectively of $17,000 and $18,000; that they considered the value of their property $30,000; that the income therefrom was around $400 per month.

It is likewise interesting to note that at the same time there was owing to defendant Stewart $6,788 evidenced by notes payable $50 per month, 6 per cent interest, and extending over a period of twenty years; that said debt was secured by a trust deed covering parcel 3 only.

It may also be noted that at the same time the defendant Stewart had such credit at the banks that he could borrow up to $20,000 on his unsecured note, however the Davises had attempted to borrow from the banks and could not do so. Under these circumstances Stewart represented to the Davises

that all of their property must be made available to him and by him used as security in order to obtain money from the bank for refinancing their debts.

The consolidating and refinancing of the debts was worked out by a plan under which Stewart became the sole creditor of the Davises in the sum of $13,479.29, payable within five years from September 27, 1932, with interest at 7 per cent per annum, and secured by the three parcels of realty owned by the Davises, together with the rents, issues, and profits therefrom, and the possession thereof. Pursuant to this plan the Davises executed a deed of the property to Stewart. He thereupon borrowed from his banker the sum of $6,542.46 at 6 per cent secured by a deed of trust on the property. This sum was used to pay the general creditors and clear the title. The property also became security for the payment to Stewart of his dirt claim of $6,788, with interest. The plan necessarily required the dismissal of the foreclosure action instituted by Stewart, and the wiping out of the junior deed of trust held by him covering parcel No. 3. The notes given by the Davises to evidence the dirt claim of $6,788 were retained by Stewart.

The items making up the sum of $13,479.29, earlier mentioned, are these: General creditors, $6,542.46; Stewart dirt claim, $6,788; interest on the dirt claim, $148.83. In computing the sum of $148.83 as interest on the said $6,788 from June 2, 1932, Stewart exacted interest at the rate of 7 per cent per annum, instead of 6 per cent per annum as provided in the said notes given by the Davises.

All expenses of the plan thus worked out were paid by the Davises. They stripped themselves of the $455 which they had on hand in cash. They paid the fees and expenses of Stewart's attorney. They paid for the title insurance policy issued to Stewart, and they paid for the title insurance policy issued to the bank. They paid for recording the deed to Stewart, and they paid for recording the deed of trust from Stewart to the bank. They paid all taxes, and they turned over to Stewart the fire insurance policies covering the buildings on the property.

That the plan thus worked out was mutually beneficial is not susceptible to doubt. It operated to the benefit of Stewart by accelerating the time of payment for the dirt, by increasing the rate of interest, and by improving the security for payment. The time of payment for the dirt

was reduced from twenty years to five years or less; the rate of interest was increased from 6 per cent to 7 per cent; and three parcels of realty together with the possession thereof and the rents, issues, and profits therefrom, were substituted as security in place of a junior deed of trust on one parcel of realty without buildings. And the plan operated to the benefit of the Davises, for it set up, during a time of depression, a moratorium of five years for the payment of their debts except insofar as their property could respond to the payment thereof.

The plaintiff personally and her husband both testified that the contract was intended solely as a security to protect the defendant's claim of $6,788 for filling delivered, and $6,542.46, the amount of other claims paid or to be paid by defendant for the Davises. The defendant on the other hand claimed it was an absolute sale. However the record shows a sale was never discussed and the value of the property was never discussed by the respective parties. The contract was expressed in three several instruments set forth in the complaint—about thirty-six folios. One of the papers is a deed. If a sale was intended 90 per cent of the other written material was wholly idle stuff. After the delivery of the contracts Davis remained on the premises under the terms of the contract to account to the defendant. The defendant entered the transaction on his books and kept accounts with the properties as a single item. Although he collected a large amount in rents he never accounted therefor in paying state or federal income taxes. After the documents were delivered Davis built, at his own expense, on the properties, with the full knowledge of the defendant, two buildings at a cost of $2,500 each; that is in the total sum of $5,000. But defendant made no objection, neither did he attempt to direct the location, architecture, or manner or nature of the construction. In doing that building Davis incurred debts in the sum of $825. That sum was paid by defendant and was by him added to the price paid, $13,479.29, and was to bear interest at 7 per cent and be payable September 27, 1937, all as provided in the agreement set forth in the plaintiff's complaint.

The defendant claims that his deed dated September 27, 1932, was a deed absolute and not a mortgage; and that this court so held when deciding the first appeal, *Davis* v. *Stewart, supra.* He further contends said decision has become the law of the case. (*Sheets* v. *Southern Pacific Co.,*

1 Cal. (2d) 408, 411 [35 P. (2d) 121].) In that connection he claims the evidence on the second trial was the same as on the first trial.

A comparison of passages contained in the decision on the first appeal and the evidence in the record does not support appellant's contention. Referring to pages of said decision and the evidence in the record before us the following propositions appear. (1) As stated on page 576 fraud was not proved. But the evidence is that plaintiff did not claim fraud but she did claim that the written instruments did not correctly express the agreement made by the parties. (2) As shown on page 577 the former decision held that all of the competent evidence on the first appeal indicated the contract was an absolute transfer. But the evidence in the record before us is that a sale was never discussed by the parties and that the written instruments were intended as security to pay debts incurred and moneys paid out for the plaintiff's account, and that the words negativing a mortgage were inserted to enable the appellant to use the deed to be made in his favor to secure a loan at his bank. It also shows that on September 6, a written instrument was prepared covering defendant's claim in the sum of $6,788 for dirt delivered. It did not cover the other debts but was otherwise similar in form. That instrument was immediately abandoned by the parties and the written instruments under attack were made and executed. (3) Again on the same page it is stated that the only competent evidence of the intention of the parties at the time of the transaction is in harmony with that expressed in the written instruments. The evidence in the present record is to the contrary. It shows that Mr. Davis negotiated with defendant and acted for himself and as attorney in fact for Mrs. Davis. It also shows that from the beginning he and the defendant negotiated for a mortgage and not for a sale absolute. (4) On page 578 it is stated that the owners did not, either by said instruments or otherwise, undertake to repay the defendant the amount of his lien for $6,788 or the amount of the other existing debts which defendant paid for them. The evidence before us is directly to the effect that to pay all of said items the contracts under attack were executed. (5) Again on the same page it was stated if the owner had treated the transaction as a mortgage and had sought to foreclose it the answer would have been that there had

been a retraxit as to the lien claim of $6,788 by the voluntary dismissal with prejudice and that there was no promise to repay said sum. But the evidence shows that the defendant entered a retraxit only of his materialman's lien and not of the debt theretofore secured by said lien. Said debt remained, evidenced by a promissory note signed by the Davises and said notes defendant still holds. ■ (6) Again on the same page it is stated that there was no obligation on the part of the plaintiff to pay interest unless the option was exercised and if the defendant sought to foreclose he could not have collected interest. That fact is in favor of the defendant's contention but the written instruments contain an option to sell back to the plaintiff. While not conclusive that fact was a circumstance to be considered in favor of the plaintiff in determining whether the agreement was a mortgage or a deed absolute. (*Henley* v. *Hotaling*, 41 Cal. 22, 27.) ■ Therefore we think it is clear that the evidence before the court on the second trial was quite different from the evidence before the court on the first trial. It follows that the decision rendered on the first appeal is not the law of the case. (*Royal Ins. Co.* v. *Caledonian Ins. Co.*, 182 Cal. 219, 223 [187 Pac. 748].)

■ Moreover it is perfectly clear that the contract made by the parties by the instruments pleaded in plaintiff's complaint either was or was not a mortgage. If, as shown above, it was a mortgage, the judgment as rendered in favor of the plaintiff must be affirmed. If it was not a mortgage but was a deed absolute, the distinction is not helpful to the defendant. The agreement was made September 27, 1932. By the terms of said agreement the Davises were given an option at any time within five years to repurchase from the defendant. That time extended to September 27, 1937. This action was commenced September 23, 1936. Considering the involved facts hereinabove recited and the contentions of the respective parties no reason appears why the bringing of said action was not both proper and necessary. The trial court received evidence and made findings showing the exact amount of disbursements made by the defendant and the amount of each item of interest that accrued in his favor. It also made findings as to the several items the defendant had received as rents, issues, and profits from said properties. Further it made exact findings as to the amount of the purchase price to be owing by the Davises and due the de-

fendant under the terms of said agreement. The latter sum was so fixed and determined to be $5,907. The defendant does not contend that it is an erroneous sum. We have found no error in the computation. It was made in strict compliance with the provisions in the contract creating the option in favor of the plaintiff. The practice followed by the trial court was in exact compliance with the rules governing the exercise by an optionee of his rights. (*Reed* v. *Parker,* 33 Wash. 107 [74 Pac. 61] ; *Hoyt* v. *Union Nat. Bank,* 115 Kan. 167 [222 Pac. 127] ; *Clancy* v. *Tremblay,* 155 Wash. 558 [285 Pac. 453] ; *Parmenter* v. *Kellis* (Tex. Civ. App.) 153 S. W. (2d) 965, 968.)

Although the plaintiff has contended that the agreement made by the parties was a mortgage and the defendant has contended it was a deed absolute, such facts do not limit this court from determining the rights of the parties. The court has the power, and it is its duty, when the plaintiff's complaint has been answered to grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue. (Code Civ. Proc., § 580.) In *Estrin* v. *Superior Court,* 14 Cal. (2d) 670 [96 P. (2d) 340], at page 678, the court said: ''A party is entitled to 'any and all relief which may be appropriate under the scope of his pleadings and within the facts alleged and proved, irrespective of the theory upon which they may be alleged. (Citing cases.)' '' We think the trial court followed that rule in framing its findings and ordering the relief it ordered in the instant case.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 14, 1942. Carter, J., did not participate therein.