[Civ. No. 2263.   Fourth Appellate District.—April 10, 1939.]

BESSIE E. COOPER, Respondent, v. CALLIE I. McDON-
ALD, Appellant.

Siemon & Claflin, Alfred Siemon, T. R. Claflin and Bennett Siemon for Appellant.

Edward West for Respondent.

BARNARD, P. J.—This is an action to quiet title to a parcel of real property in Bakersfield, involving transactions between members of a family and close relatives.

One S. C. Marshall conveyed the property to Ronald McDonald, Jr., by deed executed in 1912 and recorded in 1917, which deed recites a consideration of $10. Ronald McDonald, Jr., conveyed the property to his brother, Kenneth McDonald, by a deed executed and acknowledged in 1915 and recorded in 1925. This deed recites that it is given in consideration of love and affection and "also for the better maintenance, support, protection and livelihood" of the second party. Kenneth McDonald conveyed the property to his aunt, Elizabeth Harris, by a deed executed in February, 1930, and recorded in April, 1930, which recites that it is given in consideration of love and affection, "other valuable considerations", and for the better maintenance and support of the second party. Elizabeth Harris conveyed the property to her daughter, Bessie E. Cooper, the plaintiff herein, by a deed executed in October, 1935, and recorded in November, 1935, the consideration named being love and affection and the better maintenance and support of the second party.

Ronald McDonald, Jr., and Kenneth McDonald are the sons of the defendant Callie I. McDonald and her husband Ronald McDonald, Sr. Bessie E. Cooper, the plaintiff, is a daughter of Elizabeth Harris who was a sister of Ronald McDonald, Sr. Ronald McDonald, Sr., died in 1935, and

after his death Ronald McDonald, Jr., executed another deed purporting to convey the property to his mother Callie I. McDonald. This action followed the recordation of that deed.

The complaint was in the ordinary form of a suit to quiet title. The defendant Ronald McDonald Jr., disclaimed all interest and the defendant Callie I. McDonald answered denying ownership in the plaintiff, admitting that she claimed title, and setting up a separate defense. She alleged that she is the surviving wife of Ronald McDonald, Sr.; that she was married to him for more than forty years prior to his death; that the property in question was acquired many years ago by Ronald McDonald, Sr., as their community property; that title thereto was taken in the name of one Charles Marshall; that her husband caused Marshall to convey the legal title to Ronald McDonald, Jr.; that thereafter her husband caused the legal title to be conveyed to Kenneth McDonald to be held by him as a matter of convenience for the use and benefit of herself and Ronald McDonald, Sr.; that later her husband caused Kenneth McDonald to convey the property to Elizabeth Harris, who paid no consideration but took the property for the use and benefit of Ronald McDonald, Sr., and for the purpose of using said property, together with other property owned by her, as security for a loan made to Ronald McDonald, Sr.; that a portion of this loan had been paid out of funds belonging to Ronald McDonald, Sr.; and that approximately $2,000 of said loan remains unpaid. It is then alleged that the conveyance of the property from Elizabeth Harris to the plaintiff was made subject to said encumbrance, and that all of the above matters were within the knowledge of the plaintiff at the time she received the conveyance of the property. She prayed that her title be quieted, subject to a lien for the repayment of any remaining balance of this loan.

The court, after finding that the plaintiff is and the defendants are not the owner or owners of this property and that the defendants have no right, title or interest therein, found that Ronald McDonald, Jr., acquired title to this property in 1912 by conveyance from one Charles Marshall and by reason of said conveyance became and was the owner in fee of said lands and retained the ownership thereof until April 12, 1915; that on that day he granted and conveyed

the lands to Kenneth McDonald who by reason of said grant became the owner thereof in fee; that Ronald McDonald, Jr., paid nothing as consideration for the grant from Charles Marshall; that on February 18, 1930, Kenneth McDonald granted and conveyed the premises to Elizabeth Harris and that by reason of said grant she became and was the owner of said lands in fee; that on October 28, 1935, Elizabeth Harris granted and conveyed the lands to the plaintiff by reason of which she became and still is the owner in fee of said lands; that it is not true that the conveyance from Ronald McDonald, Jr., to Kenneth McDonald was a pretended or false conveyance; that it is not true that at the time of the execution and delivery of this conveyance the description of the property here in question had not been filled in but was subsequently inserted in said conveyance; that Callie I. McDonald is the surviving wife of Ronald McDonald, Sr., and that they were husband and wife for more than forty years prior to his death; that the lands in question were never acquired by Ronald McDonald, Sr., as the community property of himself and wife; that said lands were never the property of Ronald McDonald, Sr., as community property or otherwise; that it is not true that Ronald McDonald, Sr., caused the said Charles Marshall to convey the legal title to Ronald McDonald, Jr., in trust for Ronald McDonald, Sr.; that it is not true that Ronald McDonald, Jr., then, thereafter or ever held the said lands in trust for Ronald McDonald, Sr.; that it is not true that Kenneth McDonald, Elizabeth Harris, Bessie E. Cooper or any of them ever held said lands in trust for Ronald McDonald, Sr., or for any other person; that Kenneth McDonald conveyed the property to Elizabeth Harris in fee simple upon the condition that she use said lands, together with other lands belonging to her, as security for a loan of money for the benefit of Kenneth McDonald and others; and that the said conveyance was an outright deed of grant, intended as a bonus and not as a mortgage, and conveyed the title to said lands in fee simple to Elizabeth Harris. Judgment was entered quieting title in the plaintiff and the defendant Callie I. McDonald has appealed.

Appellant's first contention is that Ronald McDonald, Sr., was the owner of this property, that he carried the

legal title thereto in Marshall, that he caused Marshall to convey the title to Ronald McDonald, Jr., to be held in trust for Ronald McDonald, Sr., and that the court's findings to the contrary are without support in the evidence. It is argued that the evidence shows that this conveyance was made at the direction of Ronald McDonald, Sr.; that Ronald McDonald, Jr., never paid anything for the property or claimed any beneficial interest in it; that Ronald McDonald, Sr., had the use of the property by permitting another son, Lester, to occupy it, rent free, for fifteen years; that Ronald McDonald, Sr., in 1924, demanded that Ronald, Jr., convey the land to Kenneth and upon this demand being refused effected a conveyance thereof by inserting the description of this land into another and previously executed deed; that Ronald McDonald, Sr., retained the possession of the deeds; that Ronald McDonald, Jr., never exercised any acts of ownership over the property during the time the same stood of record in his name; and that Ronald McDonald, Sr., managed the property and held the title papers, tax statements, receipts and the like.

There is a conflict in the evidence with respect to some of the matters thus relied upon. While Ronald, Jr., testified that he paid nothing for the conveyance and that he might have received the deed from his father, who acted as a notary in the acknowledgment of the deed, and that he might have recorded it, he also testified that he carried this property in his name for a number of years before he discovered that the property was not his. While it appears that another son, Lester McDonald, lived upon the property from 1920 to 1935, it was stipulated that he did so by the consent of Ronald McDonald, Sr., and of Kenneth McDonald. While the appellant has contended throughout that this property was conveyed from Ronald, Jr., to Kenneth by inserting a description thereof in another and prior conveyance executed in 1915, there is a conflict in the evidence on that point. The original deed was before the trial court and the court's finding was contrary to the appellant's contention in this regard.

While certain deeds and title papers were found in a desk belonging to Ronald McDonald, Sr., after his death, none of these showed title in him or disclosed that he had any interest in the property. While he seems to have had something

to do with the transaction by which title passed from Marshall to Ronald, Jr., there is nothing to affirmatively show that he had any interest in the property standing in Marshall's name or, if so, what that interest was. While it appears that Ronald, Jr., paid nothing for the property there is nothing to show that any consideration was paid by Ronald, Sr. It is suggested that Ronald McDonald, Sr., owned the property and carried it in the name of Marshall and the succeeding grantees in order to protect himself from his creditors. While a number of things in the record raise a suspicion that such may have been the case, there is no proof of such a fact.

The appellant argues that when the consideration is paid by one party and the title taken in another a resulting trust arises, and that the facts above referred to lead irresistibly to the conclusion that Ronald McDonald, Sr., was the owner of this property during the time the title stood in the name of Ronald, Jr., and that the latter held the property in trust for him. It does not clearly appear that the consideration for this property was paid by Ronald McDonald, Sr., although it probably was. An exception to the rule relied upon by appellant exists in the case of a parent and child where the presumption of an advancement arises and rebuts the presumption of a resulting trust. (*Quinn* v. *Reilly*, 198 Cal. 465 [245 Pac. 1091].) Evidence must be clear and convincing in order to establish a resulting trust, especially after the lapse of many years. (*G. R. Holcomb Estate Co.* v. *Burke*, 4 Cal. (2d) 289 [48 Pac. (2d) 669].) Although the matter is not controlling here we think the court's finding, that the conveyance of this property from Marshall to Ronald McDonald, Jr., was not one made in trust for Ronald McDonald, Sr., is sufficiently supported by the evidence.

The next point requiring consideration is that the conveyance from Ronald, Jr., to Kenneth was merely a change in the trustee, that Kenneth paid no consideration, that he took with knowledge, that he held the title in trust for his father, and that the court's finding that he became the owner by means of such conveyance is contrary to all of the evidence except Kenneth's verbal statement that he became the owner. The argument here made goes to the weight of the evidence, the appellant saying "The testimony of Ken-

neth is so transparently fictitious that no court is warranted in believing it''. Kenneth testified that at the time he conveyed the property to Elizabeth Harris he owned the property, and that the transaction by which he acquired it took place before the deed to him was recorded. When asked what he had paid for the property when he acquired it he stated that ''the understanding was that I was to assume my brother's personal obligations and his business obligations''. He testified that he did this; that he had paid those obligations; that he had conversed with his father and brother about the transaction prior to the execution of the deed to him; that neither his father nor brother ever asked him for a reconveyance of the property; that neither of them had ever told him that they expected him to hold the property in trust for either of them; that he had never received any intimation from either of them or from anyone else that he was supposed to hold this property in trust until after his father's death, when it was suggested to him by a third party; and that he had not held the property in trust for anyone. He further testified that he first saw the deed to him prior to 1920, although he could not be positive of the date; that he thought he had first seen it at his father's store; that his brother Ronald was sick and very nearly died in 1918; that after he first saw the deed it was put in his father's safe with some other papers belonging to the witness; that the deed remained there until he recorded it; that there was more than one piece of property involved in the transaction at the time it took place; that his father then told him that ''Here was a piece of property of my brother's—that I was to take and assist my brother financially and to clean up some of his obligations, and when the obligations had been cleaned up I could record the document''; and that the transaction was carried on with his father.

Assuming that his father then had an interest in the property and in spite of certain conflicts which appear in the evidence, this is sufficient to support the court's finding that Kenneth became the owner of the property and that he did not take title in trust for his father. There is no evidence that he had any knowledge that his brother was merely holding title for his father, if such was the case, and there is ample evidence of a consideration paid by him. Some con-

tention is made that the court erred in failing to find upon the question as to whether Ronald McDonald, Sr., caused Ronald, Jr., to convey the property to Kenneth and upon the further question of whether Kenneth ever had any interest in the property, and that the court entirely failed to find on the main defense alleged in the answer to the effect that the property was deeded to Kenneth to be held in trust for his father. It was found, in a separate finding, that Kenneth had never held the land in question in trust for his father or for any other person.

It is next contended that the conveyance from Kenneth to Elizabeth Harris was made at the direction of Ronald McDonald, Sr., for his benefit, and without any intention of passing the equitable title, that the finding to the effect that Elizabeth Harris became the owner of the property was insufficient and unsupported by the evidence, and that the court erred in not finding that she took only the bare legal title for the benefit of Ronald McDonald, Sr. Kenneth McDonald testified that some time before this transaction he had guaranteed a debt owed by Jennie McDonald, another sister of his father; that he received two pieces of property in return for making that guarantee; that the obligation he had guaranteed was finally reduced to $6,000; that his father came to him and told him that the bank had called for the balance of the amount owed by Jennie McDonald and guaranteed by the witness; that he attempted to sell the property here in question but was unable to do so; that he told his father that he would deed the property to Elizabeth Harris if she would relieve him (the witness) of that obligation to the bank; that his father said he would take it up with Mrs. Harris; that his father did so and shortly after that the transaction was completed; that he had made no agreement of any kind that the property was to be deeded back to him; that he had no agreement with anybody to the effect that his deed should constitute a mortgage; and that he did not expect the property ever to come back to him. It appears that Elizabeth Harris borrowed $6,000 on the property here in question, together with other property owned by her, which amount was used to pay the debt which Kenneth had guaranteed. Apparently $4,000 of this amount was later paid off.

It also appears that an action was brought in Kern County by Elizabeth Harris to quiet her title to this property, in which Lester McDonald and Ronald McDonald, Sr., were named as defendants. Ronald McDonald, Sr., filed in that action a disclaimer under date of November 20, 1934, in which he disclaimed any right, title or interest "of whatsoever kind and character" in or to the land in question. A part of his testimony in that case was read in evidence in this case, including the following: "Q. Now this property was originally your property, was it not? A. No, it was not my property— Q. Isn't it a fact that you gave this house to Lester McDonald? A. I had no authority to give it to him, it never belonged to me." The respondent, Bessie E. Cooper, testified that after the conclusion of the other case which has been referred to, Ronald McDonald, Sr., came to Elizabeth Harris' house and said to Elizabeth Harris: "Lizzie, the house is yours and no one can touch it."

Disregarding any conflicts in the evidence it appears that Elizabeth Harris gave a good consideration for the deed to her, there is no evidence that she had knowledge of any facts which would adversely affect her title, she brought an action to quiet title against Ronald McDonald, Sr., upon whose interest the rights of the appellant must depend, and he not only filed a disclaimer in that action but at the conclusion thereof assured Mrs. Harris that the place was hers and no one could touch it. The evidence supports the findings and the court did not err in failing to find that Mrs. Harris took only the legal title for the benefit of Ronald McDonald, Sr.

The next contention is that the respondent was not a *bona fide* purchaser for value. This she concedes and there is no question that her title depends upon the title acquired by her mother, Elizabeth Harris, which was one in fee simple.

The last point raised is that the court erred in several instances in ruling on the admission of evidence. It is claimed that the court erred in sustaining objections to three particular questions. In each instance a practically identical question was answered by the witness about the same time. ■ It is then urged that the court erred in striking out certain testimony given by Lester McDonald relative to his arrangement with his father in connection with the payment of taxes while he occupied the property. Lester

was asked if he had paid the taxes on this property and he replied he had paid "some taxes". He explained that at some time, which he did not fix, his father asked him if he had a soldier's exemption and he replied that he had, that he attempted to fix his affidavit on this property but the assessor objected, that he went back and "told my father and he had me put it on another piece of property, which I did every year from that period until 1928". This was struck out because it referred to property not involved in this action. Assuming that this evidence might have had a bearing in showing the father's activity in connection with this property, there was no jury, the court had a mass of other evidence showing the father's activity over a number of years and it cannot be assumed that this evidence, if allowed to remain in the record, would have changed the result. Any error was not sufficiently prejudicial to justify a reversal.

While a portion of the evidence raises a suspicion that this father owned this property, at least during a part of the time in which the title stood in the name of others, the most that can be said is that there is a conflict in the evidence. A further consideration is that he filed a disclaimer in the quiet title action brought by Elizabeth Harris and testified in that action that he owned no interest in this property. Assuming that this was not binding upon the appellant in the event the property was community property, the appellant did not sustain the burden resting upon her to prove that such was the case. It appears in the evidence that Ronald McDonald, Sr., owned certain real property at the time of his marriage to the appellant, and we can find no evidence in the record to show the source of the property here in question or to show that it did not come from the separate property of Mr. McDonald.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.