[Civ. No. 21517. First Dist., Div. One. Mar. 25, 1965.]

KERR LAND & TIMBER CO., Plaintiff and Respondent, v. R. H. EMMERSON et al., Defendants and Appellants.

Mathews & Traverse and Francis B. Mathews for Defendants and Appellants.

Mitchell & Henderson, Cooley, Crowley, Gaither, Godward, Castro & Huddleson, R. C. Dedekam and Arthur E. Cooley for Plaintiff and Respondent.

SIMS, J.—Defendants and cross-complainants Emmerson, et al., as owners of the easement hereinafter referred to, have appealed from a judgment and decree granting the plaintiff and cross-defendant Kerr Land & Timber Co., as owner of the servient tenement, an injunction which limits the scope

of the use of the easement, and denying them any relief on their cross-complaint.

Both sides agree that the controversy between the parties to this action arises over the construction of the provisions of a paragraph of an agreement entered into by their respective predecessors in interest, and the nature and scope of the easement thereby granted. In addition to evidence of the derivation of title of the present parties and of the use actually made of the servient tenement by appellants, their predecessors in interest and their respective licensees, the record reflects that a prior judgment in this action in favor of appellants' immediate grantors and against respondent's transferors denying an injunction was reversed by decision of the District Court of Appeal for the Third Appellate District. (*Kerr* v. *Brede* (1960) 180 Cal.App.2d 149 [4 Cal.Rptr. 443].) The extent to which the opinion on that appeal defines the respective rights and obligations of the parties was put in issue at the trial and in the briefs before this court.

The material facts are set forth as they chronologically unfold in retrospect:

In 1945 and 1946 the lumbering industry in Humboldt County was just becoming aware of the merchantability of fir timber located at a distance from existing mills. Fir which had been considered of little or no value, and which had in fact been destroyed by ranchers, was sought after. By 1948 most rights to the timber were in the hands of mill and logging operators and the market began to rise following a period of fairly stable low prices.

In 1945 one Barr, respondent's predecessor in interest, owned the lands herein involved which will be referred to as the Barr Ranch. It contained about 6,300 acres of which about 5,000 consist of timber lands. The ranch lies between two public roads, the Maple Creek Road which traverses the westerly side of the ranch, and the Snow Camp Road which is separated from the ranch by intervening parcels to the east. The two roads join to the northwest and run to Korbel on state route 299, which in turn leads to Arcata. A third public road connects the two other roads and traverses the northerly portion of the Barr Ranch. In April 1946 the ranch was bounded by 13 separate parcels involving 11 different owners of which those lying to the east and south, and designated as Russ, Coward and Salisbury, have been particularly referred to in the record of this case. To the southeast of the Coward parcel, and underlying the easterly projection of the course of

the easement in question are holdings designated as Wiggins, and section 36. To the north of section 36 and apparently east of the Russ parcel lies what is referred to as the Prairie Lake Ranch which is owned by one of the original plaintiffs Kerr. It and section 36 are traversed to the east by the Snow Camp Road. A consulting forester, familiar with the area estimated that as of 1946 the holdings referred to above, with the exclusion of portions of the Wiggins Ranch to which timber rights had been disposed of in 1945, would yield about 90,-000,000 board feet of timber; and that such production would constitute a very attractive integrated unit for a logger and would of itself justify the construction of the type of road that was subsequently laid out over the Barr Ranch.

Appellants' predecessor in interest Dolly Varden Lumber Company was a corporation which was engaged in the lumber business and operated a sawmill in Arcata, approximately 25 miles from the Barr Ranch. It appears to be assumed from evidence of the holdings of Dolly Varden in 1950, and of appellants as its successors in 1962, that Dolly Varden in 1945 had the same timber interests in the area as were attributed to appellants at the time of trial.[1] In any event, it does appear that in 1950 Dolly Varden had timber rights in the Maple Creek Basin on the Barr Ranch (acquired in 1946 as hereinafter set forth), and in the parcels referred to as Coward and section 36, which together with its holdings in the Snow Camp Upper Redwood Creek Area comprised fifty or sixty million board feet. At that time the bulk of Dolly Varden's timber was in a 15,000 acre tract in middle and lower Redwood Creek which was served by entirely different road systems from that involved here.

In 1946, and continuously thereafter to and through the time of trial, it was the custom, practice, and usage in Humboldt County for the owners in a timber basin where checkerboard ownerships existed to enter into reciprocal right of way agreements which permitted each other to cross their lands for the purpose of the removal of their respective timber.

By written agreement dated May 3, 1946, Barr in consideration of the payment of $19,000 sold to Dolly Varden all the timber on his lands. The easement in controversy is the subject of paragraph 6 of the agreement and reads as follows:

---

[1]Appellants' statement of facts alleges that areas on a map prepared at the time of trial which are designated as the holdings of appellants were owned by Dolly Varden in 1945. This statement was not controverted by respondent.

"6. Sellers hereby grant to Purchaser a perpetual and exclusive right-of-way and easement upon, over and across Sellers' lands. Said right-of-way and easement shall be forty (40) feet in width and shall be located upon Sellers' lands along such route as may be selected by Purchaser, and shall be used by Purchaser, its successors, assigns and licensees, for road and highway purposes, for the purpose of transporting logs, timber, machinery, logging equipment, and all other properties in any way incident to or connected with the logging, timber and lumber business, over and across the Sellers' lands, and for the purpose of maintaining, operating, repairing and reconstructing power lines, telephone lines and other utility services across Sellers' lands, it being the intention of the Purchaser to use such right-of-way and easement for the purpose of connecting properties owned or to be owned, or controlled or to be controlled by Purchaser and lying on various sides of the Sellers' lands with each other and with existing roads and existing utility services."

Between 1946 and March 1950 a logging road of mainline, as distinguished from spur logging road characteristics, was constructed across 2 miles of the Barr Ranch and to the east line of the Coward Ranch by Dolly Varden. It is in part visible from the Kerrs' ranch residence. There is no evidence as to the direct use of this road by Dolly Varden during this period. In 1948 the Way Brothers built a sawmill on the Coward property which they operated until it burnt September 16, 1954. They processed logs up to 4½ feet in diameter, and trucked the finished lumber and the logs they were unable to process out the road over the Barr Ranch. During this period the logs came from the Coward and Barr parcels, pursuant to a logging-sawmilling agreement with Dolly Varden, and the Ways paid $1.00 per thousand board feet for lumber and logs hauled across the road. Subsequently, after November 1952 they processed logs hauled by Holmes Douglas from the Kerr Prairie Lake Ranch, and in 1953 or 1954 logs from the Wiggins' property under rights of Roddiscraft.

During the years 1948 and 1949 Dolly Varden, for a fee, licensed one Bolster to use the easement for transportation of logs from a Russ Ranch to another lumber company. This ranch lay between the two county roads, but concededly is not the Russ property which is adjacent to the Barr Ranch.

In 1950 the Kerrs acquired the Barr Ranch from Barr, and in 1954 they repurchased the rights to the remaining timber from Dolly Varden. In 1955 Dolly Varden conveyed to

Buck Mountain Logging Co. (Erickson), which in turn conveyed to Maple Creek Timber Company (Bredes and Davis) in 1956. This action was filed by the Kerrs May 28, 1957, and in 1960 while it was pending on the first appeal the Kerrs conveyed to respondent corporation, and the appellants acquired the remaining rights under the 1946 agreement with knowledge of the litigation.[2]

During the period from 1950 through 1955 Dolly Varden did not use the easement directly. It did, however, in 1950 acquire a right of way over the Wiggins' property for the purpose of extending the road easterly from the Coward property to the Snow Camp Upper Redwood Creek Area. In the spring of 1951 arrangements were made with Hanson Brothers, who had timber rights from Humboldt Plywood (subsequently Roddiscraft, Inc., and at trial Weyerhaeuser Company) in the area east of the Snow Camp Road, for the latter to extend the road easterly to a junction with the Snow Camp Road in the southeast corner of section 36. Hanson Brothers completed 2 or 3 miles of road to make this connection, about 7 miles over all from the Maple Creek Road. They hauled out about 9,000,000 board feet of logs in 1951 at the rate of between 25 to 30 truck loads a day. The Kerrs did not become aware of this extension or its use to haul timber from outside the Maple Creek Basin until 1955. In that year they found Erickson (Buck Mountain Logging Co.) exercising logging rights he had acquired from Dolly Varden in section 36, and engaged him to haul some logs. They were advised that they could get through to Snow Camp public road in traveling to the Kerr home place in the Redwood Basin.

In November 1952 Holmes Douglas, who acquired the rights to timber on the Kerr Lake Prairie Ranch, commenced hauling over the easement under license from Dolly Varden, and paid a toll of a dollar or 50 cents per thousand, or the equivalent in fixing up the road. Their trucks came onto the road by proceeding southwesterly from lower portions of the Lake Prairie Ranch to meet the road at the Coward property. Other portions of the same ranch were logged and hauled out over the Snow Camp public road without toll. This practice continued until 1954 or 1955.

In 1953 and 1954, in addition to the last-mentioned use, there was continued activity by the Ways and one Lee on the

---

[2]Although there may be other mesne conveyances, the parties agree that the foregoing are all that are material.

mill on the Coward property and in connection with timber from the Barr (Dolly Varden) and Wiggins (Roddiscraft) properties. During the same period one Paulson logged on the Russ Ranch adjacent to the Barr Ranch. He paid Dolly Varden 50 cents a thousand to use the road, and gave the Kerrs a bond to insure against injury to a connecting road over their property.

In 1955, after the transfer from Dolly Varden to Buck Mountain Logging Co., Erickson hauled logs over the road from the Coward property and from section 36 and section 35 immediately to the west of section 36. To what extent, if any, the first mentioned uses continued under license from Buck Mountain is not clear.

In February 1956 Maple Creek Timber Co. (Bredes and Davis) took over the Dolly Varden properties. Maple Creek and Roddiscraft entered into an agreement by which they mutually exchanged rights of way. Maple Creek did not use the road itself during 1956 but, in addition to Roddiscraft, licensed the use of the road for timber from the Kerr Lake Prairie Ranch and from the Coward or Salisbury property by Forrester and from property south of section 36 by Van Vleet.

With the increased use of the road the Kerrs investigated and in 1956 discovered that it was being used for hauling timber from the Redwood Creek Basin, two watersheds and about 12 to 14 miles away; and that tolls were being charged to others than Forrester and Holmes Douglas. Dr. Kerr advised the Bredes of their complaint of excess user, and on December 31, 1956, the Kerrs' attorney wrote Maple Creek demanding return of the tolls paid by the Kerrs, and asserting that Maple Creek had no right to collect tolls or permit others to use the road. Suit was filed May 28, 1957, against the Brede interests to secure an injunction against all use of the easement because of its extinguishment by misuse, or in the alternative prohibiting the renting or licensing of its use by others and its use for travel to parcels not lying on various sides of plaintiff's property.

On October 27, 1958, judgment was rendered for the defendants and entered on November 18, 1958. The court in its memorandum opinion and findings of fact declared that the last clause of paragraph 6 was "entirely gratuitous." The District Court of Appeal for the Third Appellate District reversed (180 Cal.App.2d 149). Thereafter, the rights in the easement having been transferred, a second amended complaint was filed joining the Emmersons. This complaint was answered

by the Bredes and Emmerson interests and, as successor to Roddiscraft, Inc., by Weyerhaeuser Company.[3] The Emmersons by cross-complaint sought damages for interference with their right to use the easement, a declaration of their rights, and an injunction against respondent's interference with such rights.

In support of the cross-complaint it was shown that in addition to the reciprocal rights with Roddiscraft (now Weyerhaeuser) in 1960 the Emmersons had entered into reciprocal agreements with Simpson Redwood Company so as to have a right of way from timber stands in the Snow Camp Upper Redwood Creek Basin through the Maple Creek Area, and from the westerly side of the Barr Ranch to Korbel over a shorter route than the public Maple Creek Road.

At the second trial the court in its findings of fact and conclusions of law limited the use of the easement to transportation to and from lands which were immediately adjacent to the Barr Ranch at the time of the execution of the agreement in 1946, and to lands owned or controlled by the owner of the easement which were so adjacent.[4] The judgment, however, fails to mention the status of the property in 1946 and in place of "immediately adjacent" uses language taken from the agreement itself—"properties . . . which lie on various sides"—as an alternative to "on any adjacent side," in delimiting the use granted defendants.[5]

---

[3]This defendant did not appear at the trial nor has it appealed from the judgment restraining it from using the easement. It stipulated its rights would stand or fall with appellants'.

[4]"The owner of the servient estate is entitled to judgment, injunction and decree of this Court against the owner of the easement as follows:

"(a) The owner of the easement shall not use said easement for the transportation of timber, logs, lumber or allied equipment over and upon said easement except from lands which lie immediately adjacent to the servient estate or from the servient estate itself as the ownership of such immediately adjacent lands existed on May 3, 1946, and further shall not transport any such timber, lumber, logs or allied equipment from such adjacent lands unless such timber, lumber, logs or allied equipment shall be owned or controled [sic] by the owner of the easement.

"(b) The owner of the easement shall not license the use of said easement except in conjunction with the transportation of timber, lumber, logs or allied equipment which are owned or controled [sic] by said owner of the said easement and which are to be transported from lands immediately adjacent to said servient estate, as the ownership of the same adjacent lands existed on May 3, 1946."

[5]"That the defendants R. H. EMMERSON, A. A. EMMERSON and R. H. EMMERSON & SON, a partnership, and each of them, and their agents, servants and employees, be, and they hereby are, and each of them

Appellants' attack on the judgment is threefold. In the first place, they assert that because of changes in the pleadings and evidence at the second trial the doctrine of law of the case does not preclude an entirely new and independent examination of the meaning of the agreement; or, in the alternative, that the prior decision in any event does not compel or justify the narrow construction in the present judgment. Secondly, in attacking the findings and judgment, they urge that custom and usage compel a finding and construction contrary to that made by the trial court. Finally, it is contended that the evidence shows adverse user on a broader scope as a matter of law.

## The Law of the Case

An examination of the prior proceedings reflects that although they do not compel the findings and conclusions inherent in the present judgment, and do not thereby preclude all attack on the same by appellants, they do restrict the scope of review and prevent consideration of appellants' attempts to reopen the question of their right to license and collect tolls indiscriminately.

In *Kerr* v. *Brede, supra,* the opinion states the issue presented as follows: "Defendants own an easement of right-of-way across plaintiffs' timber land, acquired by grant. For several years prior to the filing of the present complaint defendants, by licensing independent loggers and truckers to use the road, have in effect operated a toll road. Plaintiffs contend that this licensing is in violation of the terms of the

---

hereby is, permanently restrained and enjoined from using said easement over or upon the real property of plaintiff, KERR LAND & TIMBER Co., described in paragraph 1 above, and from using the road upon and over said real property for which road easement was granted, for road or highway purposes, or for the purpose of transporting logs, timber, machinery, logging equipment, or any thereof, or any other property incident to or connected with the logging, timber or lumber business, or for any other purpose, except in connection with the transportation of such logs, timber or lumber, if any, upon properties, if any, owned and/or controlled, or to be controlled, by said defendants and which lie on various sides, or on any adjacent side, of said real property of plaintiff KERR LAND & TIMBER Co.

"That the said defendants, and each of them, be, and they are hereby, permanently restrained and enjoined from licensing, or otherwise granting, assigning, or giving, the use of said easement and road over said real property of said plaintiff for any of the purposes stated in paragraph 3 hereinabove, except for such transportation from properties which are made an exception in said paragraph 3, to-wit, properties which lie on various sides, or on any adjacent side, of said real property of plaintiff KERR LAND & TIMBER Co. and which are now, or hereafter may be, owned or controlled by said defendants."

contract entered into by the predecessors in interest of the parties, and accordingly seek injunctive relief. The only issue presented is the construction of paragraph 6 of that contract. . . ." (180 Cal.App.2d at p. 150.) The decision concludes: "As we read the contract, this ["to allow defendants to continue their profitable enterprise of licensing strangers to pass over plaintiffs' land"] is clearly contrary to the intention expressed by the original parties to the agreement, and since defendants can have no greater right than their predecessor in interest, we must reject the trial court's decision [that the last clause of paragraph 6 beginning "it being the intention of the Purchaser" was "entirely gratuitous"]." (*Idem,* p. 152.)

In the course of the opinion it is also recited: "The easement is not limited in scope to the transportation of timber cut from plaintiffs' land alone but also contemplates timber cut from other properties then owned or subsequently owned or controlled by the purchaser *in the surrounding area*" (*idem,* p. 151; italics added); and "we think it clear that the parties intended that the right-of-way be used only in conjunction with the removal of timber cut by the purchaser *in the general area surrounding the sellers' land.*" (*Idem,* pp. 151-152; italics added.)

Respondent urges that the language last quoted compels the conclusion embodied in the trial court's findings of fact and conclusions of law that use of the easement is limited to hauling to and from lands "immediately adjacent" to the Barr Ranch.

Appellants contend that amendments to the pleadings, differences in the evidence received at the two trials, and differences in the findings of fact render the doctrine of "law of the case" inapplicable. They urge a new interpretation of the agreement on the basis of all the evidence at the second trial, and seek to relitigate the issue of right to license on the basis of practical necessity of access which gives them "control" over other loggers, and on the basis of custom, usage and practical interpretation put on the contract by the parties thereto. In the alternative they seek to show that "properties . . . lying on various sides of the Sellers' lands" as used in the agreement, or "surrounding area," as used in the prior decision are not synonomous with "immediately adjacent."

Each party has relied on the definition of the principle as set forth in *Tally* v. *Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049] as follows: "The doctrine of the law of the case is

this: That where, upon an appeal, the supreme court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular. (*Sharon* v. *Sharon*, 79 Cal. 633 [22 Pac. 26, 131]; *Wixon* v. *Divine*, 80 Cal. 386 [22 Pac. 244]; *Mattingly* v. *Pennie*, 105 Cal. 516 [45 Am.St.Rep. 87, 39 Pac. 200]; *People* v. *Thomson*, 115 Cal. 160 [46 Pac. 912].) Indeed, it is only when the former rule is deemed erroneous that the doctrine of the law of the case becomes at all important. It is a necessary corallary [*sic*] of this doctrine that the former ruling is not binding upon the second hearing, except as to questions which involve and are controlled by the same principle. (*Mattingly* v. *Pennie*, 105 Cal. 516 [45 Am.St.Rep. 87, 39 Pac. 200].)''

In support of this position appellants cite numerous authorities in support of the proposition that the doctrine of the law of the case cannot apply where a different state of facts is presented for consideration on the second trial.[6] In none of these cases was the interpretation of a written instrument involved. Respondent concedes that the doctrine of the law of the case cannot apply to the questions of laches, statutes of limitations and adverse user which only became material at the second trial. It properly points out

[6]*Klauber* v. *San Diego St. Car Co.* (1893) 98 Cal. 105, 107-108 [32 P. 876]; *Jacks* v. *Deering* (1907) 150 Cal. 272, 275 [88 P. 909]; *Cowell* v. *Snyder* (1915) 171 Cal. 291, 297-298 [152 P. 920]; *Estate of Baird* (1924) 193 Cal. 225, 234-239 and 244-245 [223 P. 974]; *Hoffman* v. *Southern Pac. Co.* (1932) 215 Cal. 454, 457 [11 P.2d 387]; *Harris* v. *Hensley* (1931) 214 Cal. 420, 422-423 [6 P.2d 253]; *Henslee* v. *Fox* (1938) 25 Cal.App.2d 286, 291 [77 P.2d 307]; *Haase* v. *Central Union H.S. Dist.* (1938) 27 Cal.App.2d 319, 321-325 [80 P.2d 1044]; *Wells* v. *Lloyd* (1942) 21 Cal.2d 452, 454-457 [132 P.2d 471]; *Weightman* v. *Hadley* (1956) 138 Cal.App.2d 831, 835-836 and 841 [292 P.2d 909]; *Phillips* v. *Phillips* (1957) 152 Cal.App.2d 582, 585-586 [313 P.2d 630]; *Wicktor* v. *County of Los Angeles* (1960) 177 Cal.App.2d 390, 394-396 [2 Cal.Rptr. 352]. See also: *Allen* v. *Bryant* (1909) 155 Cal. 256, 258-259 [100 P. 704]; *Millsap* v. *Balfour* (1910) 158 Cal. 711, 713-714 [112 P. 450]; *Moore* v. *Trott* (1912) 162 Cal. 268, 272-273 [122 P. 462]; *Brett* v. *S. H. Frank & Co.* (1912) 162 Cal. 735, 739 [124 P. 437]; *Taylor* v. *Bunnell* (1931) 211 Cal. 601, 605 [296 P. 288]; and *Sharon* v. *Sharon* (1889) 79 Cal. 633, 653-655 and compare concurring opinion of Thornton, J. at pp. 686-691 [22 P. 26, 131].

that the construction of the paragraph in question is, as pointed out in the first decision (180 Cal.App.2d at p. 151), a question of law, and that as such the interpretation put upon it in that decision is the law of the case. (*Security-First Nat. Bank* v. *Marxen* (1941) 19 Cal.2d 100, 103 [119 P.2d 131]; *Beam* v. *Duggan* (1940) 37 Cal.App.2d 491, 496-497 [99 P.2d 694]; *Newport* v. *Hatton* (1929) 207 Cal. 515, 517-520 [279 P. 134]; *Cooley* v. *Miller & Lux* (1914) 168 Cal. 120, 123-124 [142 P. 83]; *Gibbs* v. *Peterson* (1912) 163 Cal. 758, 763-765 [127 P. 62]; *James* v. *E. G. Lyons Co.* (1905) 147 Cal. 69, 74-75 [81 P. 275]; *More* v. *Calkins* (1892) 95 Cal. 435, 439-440 [30 P. 583, 29 Am.St.Rep. 128]. See also: *Benson* v. *Andrews* (1958) 166 Cal.App.2d 44, 51-52 [332 P.2d 698]; *Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 642-644 [160 P.2d 804]; *Carpenter* v. *Pacific States S. & L. Co.* (1937) 19 Cal.App.2d 263, 267 [64 P.2d 1102, 66 P.2d 656] (approval by Supreme Court withheld); *Wester-feld* v. *New York Life Ins. Co.* (1910) 157 Cal. 339, 342 [107 P. 699]; *People's Lumber Co.* v. *Gillard* (1907) 5 Cal. App. 435, 436-439 [90 P. 556]; *Table Mountain Tunnel Co.* v. *Stranahan* (1863) 21 Cal. 548, 551-552; and *Leese* v. *Clark* (1862) 20 Cal. 387, 415-417.) Any difference in the evidence produced at the two trials is immaterial on this point as the prior decision on appeal reflects that it was rendered solely on consideration of the terms of the agreement itself without resort to extrinsic evidence.

Appellants' attempt to show a difference in legal theory between the two trials in that at the first trial on the "First Amended Complaint for Injunction" and "Stipulation Amending First Amended Complaint for Injunction," the gravamen of plaintiff's complaint was the use of the easement by persons hauling to and from land not owned or controlled by appellants, whereas at the second trial on the "Second Amended Complaint for Injunction" the gist of the complaint was the fact that the lands where the logs originated were not "on various sides" of respondent's ranch. Comparison of the allegations and prayers involved fails to sustain this thesis. ▮ It may be conceded that the interjection of new issues, such as rights acquired by adverse possession, at the second trial precludes the application of the law of the case to those issues (*County of San Diego* v. *Milotz* (1956) 46 Cal.2d 761, 767-768 [300 P.2d 1]; *Steelduct Co.* v. *Henger-Seltzer Co., supra,* 26 Cal.2d 634, 644; *Royal Ins. Co.* v. *Caledonian Ins. Co.* (1920) 182 Cal. 219, 223

[187 P. 748]; and *Cowell* v. *Snyder* (1915) 171 Cal. 291, 297 [152 P. 920]), but the mere amendment of the pleadings will not preclude the application of the doctrine to such issues as remain the same. (*Steelduct Co.* v. *Henger-Seltzer Co., supra*, 26 Cal.2d 634, 642-643; *Benson* v. *Andrews, supra*, 166 Cal.App.2d 44, 51-53; *People's Lumber Co.* v. *Gillard, supra*, 5 Cal.App. 435, 436-439 and 440.) The same considerations apply to appellant's attempt to avoid the prior decision because of different findings at the second trial.

It is further noted that the doctrine, suggested by some of the cases to which reference has been made, that the rule of the law of the case will not be applied if its application to the facts proved at the second trial would result in a manifestly unjust decision, is not pertinent to the question of the interpretation of the agreement. (Cf. *Wicktor* v. *County of Los Angeles* (1960) 177 Cal.App.2d 390, 396 [2 Cal.Rptr. 352]; *Vangel* v. *Vangel* (1955) 45 Cal.2d 804, 809-810 [291 P.2d 25, 55 A.L.R.2d 1385]; *England* v. *Hospital of Good Samaritan* (1939) 14 Cal.2d 791, 795 [97 P.2d 813]; and *People* ex rel. *Dept. of Public Works* v. *Lagiss* (1963) 223 Cal.App.2d 23, 34 [35 Cal.Rptr. 554]; with *Wells* v. *Lloyd* (1942) 21 Cal.2d 452, 457 [132 P.2d 471]; and *United Dredging Co.* v. *Industrial Acc. Com.* (1930) 208 Cal. 705, 712 [284 P. 922].)

It is, therefore, concluded that appellants are precluded from further urging that the agreement grants them the right to license independent loggers and truckers and other strangers to pass over plaintiff's land.

The prior decision, however, does not attempt to clearly define "properties . . . lying on various sides of the Sellers' lands" for which the right of way can properly be used when such properties are owned or controlled by the holder of the right of way. The phrases "surrounding area" and "general area surrounding the sellers' lands" do not connote that certainty which the trial court establishes in its findings of fact and conclusions of law by reference to lands "immediately adjacent" to the Barr Ranch at the time of the execution of the agreement.

Respondent contends that there is no ambiguity or uncertainty in any of the foregoing phrases. It refers to dictionary definitions of "side" as synonymous with "boundary," and of "surrounding" as connoting "an enclosure" in support of the limitation to adjacent lands. Appellants point out that various parcels may surround another without being immediately adjacent, just as a crowd may surround a speaker.

It must be conceded that both terms—"side" and "surrounding"—can be used either in the sense of bounding or circumscribing the object referred to, or in the general sense of the environment or vicinity of such object. In fact, the phrase "on various sides" is closely akin to "on all sides" to which is attributed the meaning, "in every direction about one."[7] The phrases used in the agreement and those used in the decision therefore remain ambiguous and uncertain.[8]

Since it cannot be said that either the language of the agreement itself or the prior decision compels the conclusion as a matter of law that the properties referred to are those which were immediately adjacent to the Barr Ranch, appellants are entitled to further consideration of their attack on the findings and conclusions which are so phrased.

## The Findings of Adjacency

Preliminarily it should be noted that the question of whether an instrument is uncertain or ambiguous is a matter of law. (*Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13]; *Barlow* v. *Frink* (1915) 171 Cal. 165, 172 [152 P. 290]; *Wechsler* v. *Capitol Trailer Sales, Inc.* (1963) 220 Cal.App.2d 252, 263 [33 Cal.Rptr. 680], which cites *Kerr* v. *Brede, supra,* to this point; and *Pedersen* v. *Fiksdal* (1960) 185 Cal.App.2d 30, 34 [7 Cal.Rptr. 874].) When such ambiguity, uncertainty or doubt is found, the question of the interpretation of the instrument is one of fact to be determined by the trial court in the first instance upon such extrinsic evidence as may be admissible to explain the language of the contract and to ascertain the intention of the parties. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 443 [116 P.2d 62]; *Barlow* v. *Frink, supra,* 171 Cal. 165, 172; *Wechsler* v. *Capitol Trailer Sales, supra,* 220 Cal.App.2d 252, 264; *Irey* v. *Len* (1961) 191 Cal.App.2d 13, 18 [12 Cal.Rptr. 403]; *Peskin* v. *Herron* (1962) 210 Cal.App.2d 482, 486 [26 Cal.

---

[7] Webster's New International Dictionary of the English Language, Second Edition, Unabridged, 1939, p. 2330, "side"; see also p. 2540 "surround" and "surrounding." See also, Roget's International Thesaurus, Third Edition, 1962, p. 130, § 241, pp. 126-127; §§ 232.1, 232.5, 232.6, 232.9, 232.11, 232.14, 233.4, 233.7, and 234.4.

[8] See *Estate of Careaga* (1964) 61 Cal.2d 471-477 [39 Cal.Rptr. 215, 393 P.2d 415], "children" as meaning offspring of the first degree or issue; *Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 443 [116 P.2d 62], "child" as denoting minority or relationship; *Irey* v. *Len* (1961) 191 Cal.App.2d 13, 18 [12 Cal.Rptr. 403], "construct" as requiring personal services or certain results; *Wechsler* v. *Capitol Trailer Sales, Inc.* (1963) 220 Cal.App.2d 252, 263-264 [33 Cal.Rptr. 680]; and *Pedersen* v. *Fiksdal* (1960) 185 Cal.App.2d 30, 34 [7 Cal.Rptr. 874].

Rptr. 821] ; and *Spivey* v. *Fabricated Steel Service, Inc.* (1960) 181 Cal.App.2d 115, 118 [4 Cal.Rptr. 884].)

In the instant case the findings of fact and conclusions of law do not reflect whether or not the trial court relied on the rule of the law of the case, or the extrinsic evidence, or both, in concluding that the agreement should be given the limited construction. (Cf. *Taylor* v. *Bunnell* (1931) 211 Cal. 601, 604 [296 P. 288] ; and *Wechsler* v. *Capitol Trailer Sales, Inc., supra,* 220 Cal.App.2d 252, 261-262.) Under the circumstances reference may properly be made to the trial court's memorandum decision which is incorporated in the record. (*Wechsler* v. *Capitol Trailer Sales, Inc., supra,* 220 Cal.App. 2d 252, 261-262.) It reflects that the court considered both the prior ruling and the extrinsic evidence.[9]

Appellants' burden is therefore to show that the evidence is insufficient to sustain the conclusions inherent in the findings of fact and conclusions of law made by the lower court. In assuming this burden they have raised questions of both law and fact. A diligent review of the numerous authorities cited by appellants, in support of the theories of the law advanced by them as applicable to the construction of the contract, reflects that in part they seek to disregard the mandate of the prior decision that effect must be given to the last clauses of paragraph 6. Such statements as ''The grant of a right of way controls over a subsequent limitation thereof''[10], ''An expression of the purpose of making the conveyance is generally held to be directory only and not to qualify or limit a grant which is absolute in form''[11]; and the

[9]The decision recites: ''The court is of the opinion that the doctrine of law of the case applies and controls the decision of the court in this trial insofar as the opinion reported at 180 CA 2nd 149 et seq. dealt with the same question of law as is presented at this trial on the pleadings as amended. . . .

''The court finds that defendants' use of the right of way is limited to the hauling of timber cut by defendants on lands immediately adjacent to ('. . . lying on various sides of the Sellers' lands . . .', paragraph 6) the land described in paragraph 1 of the contract as being owned by plaintiff's predecessor, Robert J. Barr. In the light of the evidence at [*sic*] to the timber market in 1946, and the buying and selling of standing timber at that time, (assuming an ambiguity as to the intent of the contracting parties) there is no evidence from which it may be inferred that the contracting parties intended that timber from properties other than adjoining properties should be or ever would be hauled over the right of way.''

[10]See *Las Posas Water Co.* v. *County of Ventura* (1929) 97 Cal.App. 296, 299 [275 P. 817].

[11]See *Yuba Investment Co.* v. *Yuba Consol. Gold Fields* (1920) 184 Cal. 469, 478 [194 P. 19]; *Fitzgerald* v. *County of Modoc* (1913) 164

assertion that "The final clause should be rejected" in reliance upon the provisions of sections 1653,[12] and of sections 1069,[13] and 1070[14] of the Civil Code, all are precluded from further consideration by the opinion in *Kerr* v. *Brede, supra,* for the reasons set forth in the first part of this opinion.[15]

Appellants are on firmer ground in joining with respondent in requesting the court to carry out the mandate of section 1858 of the Code of Civil Procedure[16] and give effect to the whole agreement. ▮ It must be conceded that in determining the scope of the easement the same rules are applicable as would apply to the construction of the terms of a contract. (Civ. Code § 1066; *Eastman* v. *Piper* (1924) 68 Cal.App. 554, 561 [229 P. 1002].) ▮ In view of the conclusion that an uncertainty has given rise to the necessity for extrinsic evidence,[17] the court should go further and consider the circumstances under which the agreement was made (Code Civ. Proc., § 1860; and Civ. Code, §§ 1636 and 1647) including custom and usage, (Code Civ. Proc., §§ 1861 and 1870, subd. 12; and Civ. Code, §§ 1644, 1646 and 1655), and the practical

---

Cal. 493, 497 [129 P. 794, 44 L.R.A. N.S. 1229]; *Eldridge* v. *See Yup Co.* (1860) 17 Cal. 44, 53; and *Cooper* v. *Selig* (1920) 48 Cal.App. 228, 236-237 [191 P. 983].

[12]See *Eastman* v. *Piper* (1924) 68 Cal.App. 554, 565 [229 P. 1002]; and see Civ. Code, §§ 1650 and 1652.

[13]See also *Walsh* v. *Abbott* (1904) 145 Cal. 285, 289 [78 P. 715, 104 Am.St.Rep. 38]; and *Piper* v. *True* (1869) 36 Cal. 606, 617.

[14]See *In re Shoemake* (1931) 211 Cal. 457, 460 [295 P. 830].

[15]Regardless of the application of the rule of the law of the case the following authorities, in addition to *Kerr* v. *Brede, supra,* and the cases cited therein, support the conclusions that effect must be given to the provisions in question (see *Leala* v. *Carroll* (1929) 207 Cal. 542, 544 [279 P. 443]; *Parks* v. *Gates* (1921) 186 Cal. 151, 154-155 [199 P. 40]; *Pavkovich* v. *Southern Pacific R.R. Co.* (1906) 150 Cal. 39, 45-47 [87 P. 1097]; and *Marshall* v. *Standard Oil Co.* (1936) 17 Cal.App.2d 19 [61 P.2d 520], *passim*); and that property subservient to a particular use may not be burdened to a greater extent than is reasonably necessary in order to allow the owner of the dominant right his full exercise thereof. (*Parks* v. *Gates* (1921) 186 Cal. 151, 154 [199 P. 40]; *Wall* v. *Shell Oil Co.* (1962) 209 Cal.App.2d 504, 511 [25 Cal.Rptr. 908]; *City of National City* v. *California Water & Tel. Co.* (1962) 204 Cal.App.2d 540, 548 [22 Cal.Rptr. 560]; *Wall* v. *Rudolph* (1961) 198 Cal.App.2d 684, 694 [18 Cal.Rptr. 123].)

[16]Code Civ. Proc., § 1858 provides as follows: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (See also Civ. Code, §§ 1641 and 1643.)

[17]Compare: Code Civ. Proc., § 1856; Civ. Code, §§ 1638, 1639 and 1698.

construction placed on the contract by the acts and conduct of
the parties under this contract before any controversy arose
as to its meaning. (*Universal Sales Corp.* v. *California Press
Mfg. Co.* (1942) 20 Cal.2d 751, 761-762 [128 P.2d 665];
*Mitau* v. *Roddan* (1906) 149 Cal. 1, 14 [84 P. 145, 6 L.R.A.
N.S. 275]; *Tennant* v. *Wilde* (1929) 98 Cal.App. 437, 453-454
[277 P. 137]; and see also *Bohman* v. *Berg* (1960) 54 Cal.2d
787, 795-796 [8 Cal.Rptr. 441, 356 P.2d 185]; *Crestview
Cemetery Assn.* v. *Dieden* (1960) 54 Cal.2d 744, 752-754 [8
Cal.Rptr. 427, 356 P.2d 171]; and *Doll* v. *Maravilas* (1947)
82 Cal.App.2d 943, 949-950 [187 P.2d 885].)

The rules are stated more succinctly in *Barlow* v. *Frink,
supra,* 171 Cal. 165, which has been referred to by both
parties, as follows: "Whether a contract is in any of its
terms or provisions ambiguous or uncertain is a matter of
determination in the first instance by the trial court. If it
is found so to be, it is primarily the duty of the trial court
to construe it after a full opportunity afforded all the parties
in the case to produce evidence of the facts, circumstances
and conditions surrounding its execution and the conduct of
the parties relative thereto." (171 Cal. 165 at pp. 172-173.)

Before examining the sufficiency of the evidence to sustain
the findings and conclusions of the trial court in the light
of the foregoing principles, it is necessary to consider appellants'
contentions that evidence was erroneously excluded,
and that their request for more particular findings was erroneously
denied.

Appellants, after objection sustained, made an offer to prove
by several witnesses qualified in the lumber business that
"this . . . timber . . . lying to the east of the Snow Camp
Road, being in the Snow Camp Upper Redwood Creek Basin,
does, insofar as the removal thereof by customary logging
practices, lie in the same geographical logging basin as the
timber in Section 36, Lake Prairie, and the other area lying
between Snow Camp Road and Maple Creek Road." They
refer to this testimony as expert testimony on the scope of
the area which customarily would be served by an exclusive
logging easement, and seek its admission by analogy to other
issues on which such testimony has been received.[18] Their

[18]See *Estate of Toomes* (1880) 54 Cal. 509 [35 Am.Rep. 83] (cleric on
sanity); *City of Los Angeles* v. *Frew* (1956) 139 Cal.App.2d 859 [294
P.2d 1073] (farmers and others on real estate value); *Richfield Oil Corp.*
v. *Crawford* (1952) 39 Cal.2d 729 [249 P.2d 600] (surveyors on meaning
of calls in deed); and *Natural Soda Products Co.* v. *City of Los Angeles*
(1952) 109 Cal.App.2d 440 [240 P.2d 993] (civil engineers on proper
method of operating dam and spillway).

argument is predicated on the premise that the prior decision establishes appellants' rights to use the easement *"in the general area* surrounding the sellers' lands"* (italics added) giving full weight to the emphasized portion and disregarding the qualifying phrase. The proffered evidence might have thrown some light on the desirability of a through easement for the benefit of the owners of timber in the Snow Camp Upper Redwood Creek Basin, but it does not demonstrate, and it nowhere else appears, that the existence of such holdings by Dolly Varden was called to Barr's attention, or that he was chargeable with knowledge of any custom or usage which would compel an interpretation subjecting his property to passage of trucks bearing lumber from whatever areas it might be economically feasible to bring lumber over that route. The facts reflect that the interchange agreement to the east with Roddiscraft (now Weyerhaeuser) was not formally effected until 1956 and the agreement with Simpson, to the west, in 1960.

It is noted that the excluded evidence is but cumulative. In support of their attack on the finding of adjacency, appellants contend that the only evidence on the question of the "general area" demonstrates that it encompasses the Snow Camp Upper Redwood Creek Basin. In this connection, they refer to testimony of Dolly Varden's logging manager from 1950 through 1955, a qualified consulting forester, and testimony of Guy Kerr which referred to the original home place in the Redwood Basin in response to a question about other lands owned in the "same area." It is concluded that the trial court gave this evidence the weight it deserved in the light of the considerations alluded to above in connection with the rejected evidence. In any event, in view of its admission appellants are in no position to object to the rejection of evidence which could be but cumulative at best. (*Berg* v. *Sonen* (1964) 230 Cal.App.2d 434, 441 [41 Cal. Rptr. 37]; *Shaw* v. *Shaw* (1962) 204 Cal.App.2d 210, 215 [22 Cal.Rptr. 193]; *Cooper* v. *McDonald* (1939) 32 Cal. App.2d 114, 122-123 [89 P.2d 412]; and *Larimer* v. *Smith* (1933) 130 Cal.App. 98, 104 [19 P.2d 825].) Furthermore, if the evidence be treated as expert opinion evidence, the facts on which it was predicated—geography and the relative holdings of the parties—were all before the court. Under such circumstances it is questionable whether the exclusion of the ultimate opinion is prejudicial. (See *Estate of Fisher* (1927) 202 Cal. 205, 214 [259 P. 755].)

As stated, the appellants not only attack the findings and conclusions of the trial court, but complain of the court's failure to adopt more specific findings proposed by them. They rely on cases which suggest that if special findings are requested they should be allowed, but in each of which the request was found to have been waived.[19] ▮ The applicable rules are set forth as follows in *City of National City* v. *California Water & Tel. Co.* (1962) 204 Cal.App.2d 540, 545 [22 Cal.Rptr. 560]: "As a general rule 'a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made.' [Citations.] ▮ However, this rule does not apply if the appealing party made a request for a specific finding upon the issue in controversy. In the latter event, by virtue of the provisions of section 634 of the Code of Civil Procedure, the court, on appeal, may not infer that the trial court found in favor of the prevailing party on the issue. ▮ On the other hand, it is not the purport of the code section under consideration that in the event a request for a specific finding is made and denied, the court on appeal must infer a finding unfavorable to the prevailing party. Where such a request has been made and denied the judgment must stand or fall on the finding expressly made unless the evidence on the issue in controversy is undisputed, is of such a nature that it reasonably cannot be disbelieved, and no conflicting inferences can be drawn therefrom. [Citations.] ▮ In the latter event the issue properly is one of law and not of fact; no finding need be made thereon; and when made is not binding on the reviewing court. [Citations.]"

▮ Insofar as the requested findings encompass evidentiary matter, as distinguished from ultimate facts, guidance is found in *Lewetzow* v. *Sapiro* (1961) 188 Cal.App.2d 841 [11 Cal.Rptr. 126], wherein it is recited: "It is axiomatic that a finding of ultimate fact embraces the necessary probative facts to sustain it. Inclusion of evidentiary facts would add nothing of value and would needlessly embellish the structure of the findings with rococo details." (188 Cal. App.2d at p. 845; see also *Kurtz* v. *Kurtz* (1961) 189 Cal. App.2d 320, 322-323 [11 Cal.Rptr. 230]; and *Wishart* v.

---

[19] *Tooke* v. *Allen* (1948) 85 Cal.App.2d 230, 238, 239 [192 P.2d 804]; and *Del Ruth* v. *Del Ruth* (1946) 75 Cal.App.2d 638, 644-645 [171 P.2d 34].

*Claudio* (1962) 207 Cal.App.2d 151, 153 [24 Cal.Rptr. 398].)

 Other requested findings fall within the interdiction of *Eastman* v. *Piper, supra,* 68 Cal.App. 554, which states: "Appellant complains because the court did not find upon certain issues. One of the issues upon which it is claimed the court failed to find is so completely irreconcilable with another upon which the court found in favor of respondent that the finding upon the latter issue is tantamount to a finding adverse to appellant upon the issue as to which it is claimed no finding was made. The other issues upon which it is claimed the court failed to find either presented conclusions of law or were of such a character that had findings thereon in favor of appellant been made a different judgment would not have been required. Appellant's objection falls within the well-established rule that a failure to find upon an issue is not ground for reversal when no substantial right of the appellant is prejudiced thereby." (68 Cal.App. at p. 569.)

 Specifically, appellants complain of failure to set forth the express manner in which the easement has been used beyond its terms. The findings reflect first, user for the carriage of timber from property not owned or controlled by the owner of the easement—prohibited as hereinabove set forth by the law of the case—and, secondly, user for the benefit of lands not adjacent to the Barr Ranch—the subject of the present inquiry. No more specific findings are necessary.

 They also particularly requested findings as to whether their licensees used the easement in violation of its terms. "The fact of agency is evidentiary. It need not be pleaded nor found." (*Hahn* v. *Hahn* (1954) 123 Cal.App.2d 97, 102 [266 P.2d 519]; and see *Wilson* v. *Rancho Sespe* (1962) 207 Cal.App.2d 10, 19 [24 Cal.Rptr. 296].)

It is concluded that insofar as the interpretation of the agreement is concerned, the findings of the court must stand or fall as they have been made upon the sufficiency of the evidence that was actually before the court on that issue.

Appellants challenged respondent to demonstrate that the evidence supported the finding of fact that the use of the easement is confined to lands "immediately adjacent" to the Barr Ranch as the ownership of those lands existed at the time of the execution of the agreement. Respondent has only come forth with the doctrine of the law of the case and definitions of "surround." An examination of the entire record reflects, from the questions propounded throughout

by respondent's counsel that its main purpose was to show that use of the easement had been confined to the Maple Creek Basin. It is demonstrable that if this is not a proper construction, there are serious problems of adverse user which will be hereinafter discussed.

Insofar as the findings regarding the construction of the agreement itself are concerned the following provisions of paragraph 6 reflect an intent to comprehend more than adjacent property: the fact that the easement is perpetual and therefore may be deemed to have been intended for substantial use; the reference to lands to be controlled or owned in the future; and the reference to existing roads which if interpreted as public roads would encompass the Maple Creek Basin between the Maple Creek and Snow Camp Roads. Appellants' references to connections with utilities as demonstrating a wider range of use is predicated upon the assumption that a public line would be installed as distinguished from private lines to connect up with existing public facilities; and their attempts to secure further nourishment from the words "assigns and licensees" meet with the withering desiccation of the law of the case which limits the application of these words to those operating on properties owned or controlled by respondent.

Before examining the circumstances and conditions surrounding the execution of the agreement and the conduct of the parties in relation to it, it is necessary to qualify some of the assertions of the parties. As noted above in connection with the discussion of the evidence, appellants take the position that the mere existence of a circumstance at the time of the execution of the contract is controlling, and they similarly appear to contend that any unilateral use of the property by themselves or their predecessors will demonstrate the practical construction to be put on the agreement. This is not the law. The circumstances and subsequent performance and use are only relevant insofar as they are known to and participated or acquiesced in by both parties. None of the multitude of authorities on which appellants rely indicates to the contrary, and reason and authority indicate that there must be at least knowledge of the circumstance or act by the person to be charged. (See *Piper* v. *True* (1869) 36 Cal. 606, 617-618.)

On the other hand, respondent appears to assert: that appellants may not rely upon the acts of its licensees as being, subject to the qualifications above, relevant on the issue of

practical construction (or the issue of adverse possession hereinafter discussed); that appellants may not look to the acts of its predecessors or to the acts or omission of respondent's predecessors for the same purposes; and that there has been an interruption of user by the transfer of ownership of title to the easement which precludes consideration of the uses for either purpose.

These views must be rejected. It is clear on the one hand, that appellants and their predecessors if they acted through agents could assert such rights by way of construction of the contract or adverse possession as were acquired thereby. Furthermore, such rights may be acquired by a tenant for his landlord. (*Murray* v. *Fuller* (1947) 82 Cal.App.2d 400, 406-407 [186 P.2d 157]; *Balestra* v. *Button* (1942) 54 Cal.App.2d 192, 199 [128 P.2d 816]; *Bernstein* v. *Dodik* (1933) 129 Cal.App. 454, 458 [18 P.2d 983].) Respondent suggests that since a license confers on the licensee no interest in land[20] that use by their licensees avails appellants and their predecessors naught. Whether or not the license creates an interest in land is immaterial. The license establishes the privity between the licensor as holder of the easement and the licensee actually using respondent's land, the same as agency or tenancy in the principles set forth above. It further appears, contrary to respondent's contention that a successor in interest to property may be bound by the construction reasonably given contractual terms by the original parties. (*Doll* v. *Maravilas, supra,* 82 Cal. App.2d 943, 949-950; and *Gregers* v. *Peterson Ice Cream Co., Inc.* (1958) 158 Cal.App.2d 746, 754 [323 P.2d 572].)

Turning now to the facts, they reflect that because of the deaths of Barr and the logging superintendent of Dolly Varden there is no evidence of what was discussed between the parties. The respective ownerships by Barr and Dolly Varden set out above cast little light on the problem, particularly because we do not know to what extent they were known to each of the parties. A map of the respective ownerships at the time of the execution of the contract reveals such a hodgepodge of contiguous ownerships of such varying dimensions and area that it tends to make the requirement of adjacency irrational. The fact that the whole Maple Creek Basin itself was an economical logging unit suggests that more than contiguous lands were intended, but implies

---

[20] See 31 Cal.Jur.2d 209-211, "Licenses," *passim.*

limitations at the public roads. The custom of cross-easements explains why reference was made to lands "lying on various sides" but gives little clue to the extent to which the easement owner could go.

The use for timber from the nonadjacent Russ Ranch by Bolster, under license from Dolly Varden, if known and acquiesced in by Barr, would tend to indicate a construction of the agreement broader than adjacency. It may be presumed that Barr, if not aware of this use, was at least put on inquiry because the use for his property and those of his contiguous neighbor on the Coward parcel was for logs to and finished lumber from the Way Mill with the exception of such logs as they could not cut.

After the Kerrs purchased, the road was extended and Hanson Brothers hauled from beyond the Snow Camp Road. The evidence, however, justifies the finding that these facts were not known by the Kerrs at the time. They did, however, acquiesce in the use of the easement for the nonadjacent Lake Prairie Ranch. Whether or not they knew of the use for the nonadjacent Wiggins' property is not clear. In 1955 Buck Mountain Logging Co. as owner of the easement used it while logging nonadjacent sections 35 and 36. This was known to Kerrs, but it does not appear they protested. By 1956 it is clear the Kerrs were investigating and not acquiescing, but their original complaint in December 1956 was silent as to the place of origin of the timber and only demanded repayment of tolls paid by the Kerrs and cessation of use of the road as a toll road.[21]

Respondent seeks to avoid the effect of use by the nonadjacent owners in the Maple Creek Basin because it was permissive. ▪▪▪ It is true that where a dispute arises between a landowner and a neighbor it is a question of fact whether the use is adverse or a neighborly accommodation. (*Fobbs* v. *Smith* (1962) 202 Cal.App.2d 209, 213 [20 Cal.Rptr. 545]; *Bernstein* v. *Dodik, supra,* 129 Cal.App. 454, 459.) Respondent overlooks the fact that the road was not the Kerrs' for them to grant or deny permission, and that those using the road did so under Dolly Varden and its successors, not under the Kerrs. The issue is not whether neighbors may use the road, but whether appellants may use the road when and if

---

[21]Although user to show adverse possession must antedate the filing of suit by the statutory period, usage to show practical construction may occur right up to trial. (*Kohn* v. *Kohn* (1950) 95 Cal.App.2d 708, 713-714 [214 P.2d 71].)

they own or control timber on such neighboring properties as are not adjacent to the Barr Ranch.

From the foregoing there is nothing to sustain the findings and conclusions of adjacency; nor for that matter do appellants receive much comfort for their attempts to extend their rights past the Snow Camp Road. ▇▇▇ The evidence being conflicting in part, and in any event subject to conflicting inferences, the trial court must give its interpretation to the uncertain limitation "properties . . . lying on various sides of the Sellers' lands." (*Barlow* v. *Frink, supra,* 171 Cal. 165, 172; *Wechsler* v. *Capitol Trailer Sales, Inc., supra,* 220 Cal. App.2d 252, 264; and *Pedersen* v. *Fiksdal, supra,* 185 Cal. App.2d 30, 36.) *Wechsler* suggests that where the evidence is before the court (and the fact that this is a second trial suggests that all that can be produced has been produced here), the matter should be remanded for amended findings on the subject of intent. (See 220 Cal.App.2d at p. 265.)

### Adverse User

By their answer appellants claim a prescriptive right to use the easement in the manner and for the benefit of the properties for which it had been used up to the time suit was commenced. By cross-complaint they assert the right to so use the easement, claim damages for interference by respondent with the enjoyment of these rights, and seek a decree establishing and an injunction protecting them.

The trial court found that the uses complained of—for the benefit of the products of lands not owned or controlled by appellants, or of lands not adjacent to the Barr Ranch—occurred "Less than five (5) years prior to filing the original Complaint herein [May 28, 1957]. . . ." It further found that none of the allegations of the answer or cross-complaint were true except as specifically set forth in the findings made. Appellants attack the sufficiency of the evidence to sustain these findings, and complain of the trial court's failure to make more specific findings in accordance with their timely request.

Before discussing the facts and law applicable to the question of whether or not appellants have acquired any rights in excess of those granted, it is necessary to place the case in proper perspective in order to dispose of any misconception of the rights appellants are asserting. ▇▇▇ Respondent has sought and secured an injunction against uses which it alleges were in excess of those granted and which materially increased the burden on its property. The injunction has issued

to prevent a continuation of unlawful acts which would deprive the landowners of the full enjoyment of its property and to preclude the excessive and unwarranted uses from ripening into a prescriptive use. (*Russell* v. *Palos Verdes Properties* (1963) 218 Cal.App.2d 754, 771-773 [32 Cal.Rptr. 488]; *Wall* v. *Rudolph* (1961) 198 Cal.App.2d 684, 697 [18 Cal.Rptr. 123]; *Keeler* v. *Haky* (1958) 160 Cal.App.2d 471, 480 [325 P.2d 648]; *Bartholomew* v. *Staheli* (1948) 86 Cal. App.2d 844, 856 [195 P.2d 824]; *Watson* v. *Heger* (1941) 48 Cal.App.2d 417, 421 [120 P.2d 153]; *Winslow* v. *City of Vallejo* (1906) 148 Cal. 723, 727 [84 P. 191, 113 Am.St.Rep. 349, 7 Ann.Cas. 851, 5 L.R.A. N.S. 851] and see *Crimmins* v. *Gould* (1957) 149 Cal.App.2d 383, 391-392 [308 P.2d 786].) Appellants logically are entitled to show in defense that such uses have matured into a prescriptive right. The fact that they claim under the disputed interpretation of the grant, and in the alternative by prescription is perfectly proper. The claim in the pleadings that appellants are the owners of the easement created by the agreement is not, as asserted by respondent, a binding admission[22] that the express rights they seek to enjoy are limited by whatever narrow interpretation may be placed on that instrument. ▮ "It is well settled in California that a defendant may plead as many inconsistent defenses in an answer as she may desire and that such defenses may not be considered as admissions against interest in the action in which the answer was filed. [Citations.]" (*Jones* v. *Tierney-Sinclair* (1945) 71 Cal.App.2d 366, 373 [162 P.2d 669]; and see *Irrigated Valleys Land Co.* v. *Altman* (1922) 57 Cal.App. 413, 431 [207 P. 401].)

Respondent also urges that appellants are barred from asserting any prescriptive rights because they have not repudiated the grant. (See *Brandon* v. *Umpqua Lumber etc. Co.* (1914) 26 Cal.App. 96, 98 [146 P. 46].) This assumes that they are claiming the same rights by prescription as by the grant. The fact is, as noted above, they are asserting a right to exercise and were exercising uses in excess of those under the grant as construed by the trial court. It is these excess uses which are in question just as was the case in each of the injunction cases to which reference was made above. ▮ The existence of a grant does not preclude the acquisition of greater rights by prescription. (See *Myers* v. *Berven* (1913) 166 Cal. 484, 488 [137 P. 260]; and *Fobbs* v. *Smith* (1962) 202 Cal.App.2d 209, 212 [20 Cal.Rptr. 545].)

---

[22]See *Brown* v. *Aguilar* (1927) 202 Cal. 143, 149 [259 P. 735]; *Treager* v. *Friedman* (1947) 79 Cal.App.2d 151, 172 [179 P.2d 387].

Reference has already been made to respondent's claims that there is a lack of privity between appellants and their predecessors and their respective licensees so as to preclude the consideration of their aggregate acts as inuring to appellants' title.[23] There is nothing in the authorities upon which respondent relies[24] to preclude appellants from asserting all uses made of the property by their predecessors in title, and by those whose use of the property was derived from and under the rights asserted and exercised by the holders of the title to the easement. (Civ. Code, § 1104; *Sorensen* v. *Costa* (1948) 32 Cal.2d 453, 464 [196 P.2d 900]; and *Bernstein* v. *Dodik, supra,* 129 Cal.App. 454, 458.)

The parties are in accord as to the elements necessary to establish a prescriptive right. They have recently been set forth as follows: "The elements necessary to be proved to establish either adverse possession or adverse user are: open and notorious user or possession, which is continuous and uninterrupted, hostile to the true owner, and under a claim of right (2 Witkin, Summary of Cal. Law, Real Property, § 12, p. 871; *Idem.,* § 190, p. 1028, and cases there cited), or as these elements are perhaps more nicely stated with respect to easements in the Restatement:

"Section 457, page 2923: 'An easement is created by such use of land, for the period of prescription, as would be privileged if an easement existed, provided the use is (a) adverse, and (b) for the period of prescription, continuous and uninterrupted.'

"Section 458, page 2924: 'A use of land is adverse to the owner of an interest in land which is or may become possessory when it is (a) not made in subordination to him, and (b) wrongful, or may be made by him wrongful, as to him, and (c) open and notorious.'" (*Cleary* v. *Trimble* (1964) 229 Cal.App.2d 1, 6-7 [39 Cal.Rptr. 776]; see also *O'Banion* v. *Borba* (1948) 32 Cal.2d 145, 150 [195 P.2d 10]; *McCarty* v. *Walton* (1963) 212 Cal.App.2d 39, 44 [27 Cal. Rptr. 792]; *Fobbs* v. *Smith, supra,* 202 Cal.App.2d 209, 213; *Jones* v. *Harmon* (1959) 175 Cal.App.2d 869, 875 [1 Cal. Rptr. 192].) The period fixed for the acquisition of prescriptive right is five years (Civ. Code, § 1007; Code Civ. Proc., § 321). Concern is therefore limited to uses which

[23] *Ante,* p. 225.
[24] See 2 Cal.Jur.2d 567, Adverse Possession, § 62; *Sorensen* v. *Costa* (1948) 32 Cal.2d 453, 461-464 [196 P.2d 900]; and *Allen* v. *McKay & Co.* (1898) 120 Cal. 332, 339 [52 P. 828].

occurred prior to May 28, 1952, except insofar as subsequent conduct of the parties may tend to explain or illuminate conduct which preceded that date.

The facts clearly reflect that the easement was used under license from Dolly Varden during the years 1948 and 1949 for the transportation of logs from a nonadjacent Russ Ranch not owned or controlled by Dolly Varden in the Maple Creek Basin, and that during the year 1951 Hanson Brothers extended the road to the Snow Camp Road, and under license from Dolly Varden hauled about 9,000,000 board feet of logs at the rate of 25 to 30 truck loads a day from Snow Camp Upper Redwood Creek Basin property not owned or controlled by Dolly Varden. Insofar as a finding that "Less than five (5) years prior to filing the original Complaint herein the Defendants and their predecessors in interest did enter in and upon said servient estate" and use the easement for purposes in excess of those embraced within the terms of the agreement is a finding that no such uses occurred before, it is not supported by the evidence.[25] The general findings against the allegations of the answer and cross-complaint would support the inference that such uncontradicted use established no rights in appellants. Whether this is because such use was disregarded, or because it was not open and notorious, or because it was not continuous and uninterrupted, or because it was permissive and not hostile to the interests of respondent's predecessors is left to conjecture by the findings.[26] Appellants requested specific findings as to "when the predecessors in interest of defendant commenced the licensing of the user of the roadway to remove timber not adjacent to the Barr Ranch." They objected to the general findings in respect of the allegations of the answer and cross-complaint, and requested specific findings on the question of the knowledge of "plaintiff and *its predecessors*" (italics added) of uses antedating the beginning of the prescriptive period, on the fact that licensing for lands not immediately adjacent to the Barr Ranch commenced in 1948; and on the specific issues referred to above as essential to the establishment of a pre-

[25]Nor can these admitted facts be reconciled with the following statement in the court's opinion: "Not until 1955 or possibly 1956 was the use extended to the hauling of logs from nonadjacent properties as an asserted matter of right."

[26]The court's opinion does recite: "It appears from the evidence that the first asserted right to license the use of the right of way coming to *plaintiff's knowledge* occurred in the winter of 1952-1953 as the logger on Lake Prairie Ranch imparted this information to Dr. Kerr." (Italics added.)

scriptive right. The principles alluded to above[27] suggest that under these circumstances, and as to these issues, the second rule referred to in the *City of National City* case, *supra*, should be applied and the specific issues should have been resolved by express findings of fact. This court cannot infer that all or any of the issues presented would have been resolved in favor of respondent. (Code Civ. Proc., § 634; *Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, 463-467 [37 Cal.Rptr. 548]; *Ortiz* v. *Avila* (1963) 222 Cal.App.2d 786, 790-792 [35 Cal.Rptr. 522]; *29 Palms Van & Storage* v. *Los Angeles Met. Transit Authority* (1963) 221 Cal.App.2d 183, 185-186 [34 Cal.Rptr. 430]; *Ward* v. *McMahan's of Torrance* (1963) 215 Cal.App.2d 511, 517 [30 Cal.Rptr. 213]; cf., *Lord* v. *Sanchez* (1955) 136 Cal.App.2d 704, 706 [289 P.2d 41].) Of course, the making of such findings would be pointless if they could only be resolved adversely to appellants, but the evidence and law applicable thereto do not compel such a conclusion.

The uses in question prior to May 28, 1952, have been set forth above. Whether such uses are within or without the scope of the easement as reappraised on remand will have to await that event. If it be assumed that one or both of said uses is without the scope of the grant a determination should be made as to the other elements of adverse possession.

▉ The use by appellants' predecessors and their licensees, insofar as it exceeded the terms of the grant, was hostile in that it was under claim of right and was not with the permission of respondent and its predecessors. No evidence has been alluded to which shows that Barr, the Kerrs, or respondent prior to 1956 ever even discussed with, much less gave permission to appellants' predecessors to exceed the terms of the agreement. The question of any permission granted to neighbors has been heretofore discussed.[28]

▉ There is no presumption, however, that notice of this excessive use is chargeable to the owners of the servient tenement. (*O'Banion* v. *Borba, supra,* 32 Cal.2d 145, 148-150; *Cleary* v. *Trimble, supra,* 229 Cal.App.2d 1, 8-10; and *LeDeit* v. *Ehlert* (1962) 205 Cal.App.2d 154, 160-162 [22 Cal.Rptr. 747].) An inference may so arise, however, from open and notorious use. (*O'Banion* v. *Borba, supra,* 32 Cal.2d 145, 148; *Fobbs* v. *Smith, supra,* 202 Cal.App.2d 209, 213; and *Lord* v. *Sanchez, supra,* 136 Cal.App.2d 704, 707.)

[27] *Ante*, page 222, see text following note 19.
[28] *Ante*, p. 226.

On the issue of whether the excess use was open and notorious, the Kerrs have denied all knowledge of the uses complained of which arose prior to the winter of 1952-1953 when such use was made of the easement for their Lake Prairie Ranch. On the other hand, their knowledge of the activities of Way in milling the Dolly Varden timber on the Barr and adjacent Coward parcels into finished lumber, may well have put them on inquiry as to the source of the 25 or more trucks a day that went by with logs. Way testified that during the seven years he worked the mill he hauled out about 5,000,000 or 6,000,000 feet of lumber, and about 2,000,000 feet of logs, an annual rate hardly commensurate with the 9,000,000 feet of logs removed by Hanson in one year. This and their subsequent conduct in using and acquiescing in the use of the easement for other nonadjacent properties in the Maple Creek Basin, would certainly justify a finding for appellants on this issue if the grant is so restricted.

On the issue of continuity of use it is important to define what use is in question. Respondent appears to urge that each user is separate and that therefore there can be no continuity. Insofar as this argument is predicated upon the segregation of each licensee of appellants' predecessors, or the fact that such predecessors did not use the easement for extensive periods for their own timber, as distinguished from use through licensees, the question has been resolved against respondent.[29] It may also be asserted that each use can only relate to the property for which it was used, i.e., Russ Ranch or the holdings in Upper Redwood Creek from which Hanson hauled in 1951. Appellants' claim, however, is more general, it is to use the easement as a general logging road. The general rule as to continuity is stated as follows: "The element of continuity is satisfied by necessity rather than regularity of use, so that an omission to use the driveway when not needed does not disprove continuity of use shown by using it when needed." (*Fobbs* v. *Smith, supra,* 202 Cal.App.2d 209, 213; see also *Ross* v. *Lawrence* (1963) 219 Cal.App.2d 229, 233-234 [33 Cal.Rptr. 135]; *Medina* v. *Brown* (1959) 172 Cal.App.2d 208, 211 [342 P.2d 353]; *Scott* v. *Henry* (1925) 196 Cal. 666, 670-671 [239 P. 314]; *Irrigated Valleys Land Co.* v. *Altman* (1922) 57 Cal.App. 413, 429 [207 P. 401]; *Myers* v. *Berven, supra,* 166 Cal. 484, 490; *Mont-*

---

[29] *Ante,* pp. 224-225 and 229-230.

*gomery & Mullen Lbr. Co.* v. *Quimby* (1912) 164 Cal. 250, 253 [128 P. 402] ; *Hesperia Land etc. Co.* v. *Rogers* (1890) 83 Cal. 10 [23 P. 196, 17 Am. St. Rep. 209] ; and *Webber* v. *Clarke* (1887) 74 Cal. 11, 15 [15 P. 431].)

Within the foregoing principle, the facts as first recited herein would justify findings of continuous use as necessary for the logging business for 25 or 30 trucks a day from properties not contemplated by the agreement from 1951 to and including the time suit was filed May 28, 1957. Respondent, however, has not offered evidence sufficient to show a right to a general use, or a burden in excess of that which may have been established by Hanson's use. ██ ''The scope of a prescriptive easement is determined by the use through which it is acquired. A person using the land of another for the prescriptive period may acquire the right to continue such use, but does not acquire the right to make other uses of it." (*Hannah* v. *Pogue* (1944) 23 Cal.2d 849, 854 [147 P.2d 572] ; and see *O'Banion* v. *Borba, supra,* 32 Cal.2d 145, 155; *Sufficool* v. *Duncan* (1960) 187 Cal.App.2d 544, 550 [9 Cal.Rptr. 763] ; *Bartholomew* v. *Staheli, supra,* 86 Cal. App.2d 844, 850.)

Nothing in the foregoing discussion of the sufficiency of the evidence to sustain findings in favor of appellants on the specific issues presented by them is to be taken as indicating that the evidence compels such a finding, or that it is insufficient to sustain findings for respondent on all the issues except that of the actual use by appellants. ██ The evidence is conflicting and each one of the elements giving rise to a prescriptive right is a question of fact to be determined by the trial court. (*O'Banion* v. *Borba, supra,* 32 Cal.2d 145, 147; *Gaut* v. *Farmer* (1963) 215 Cal.App.2d 278, 283 [30 Cal. Rptr. 94] ; *McCarty* v. *Walton, supra,* 212 Cal.App.2d 39, 44; and compare facts in *Case* v. *Uridge* (1960) 180 Cal.App.2d 1 [4 Cal.Rptr. 85] with *Medina* v. *Brown, supra,* 172 Cal.App. 2d 208.)

It is concluded that on the issue of prescription the case should be remanded for the purpose of making findings of fact on the specific issues referred to above, together with appropriate conclusions of law, and for the entry of a new judgment in conformity therewith. In this connection, attention is directed to the fact that the judgment is not in conformity with the conclusions of law. It fails to refer to the date of adjacency referred to in the findings of fact and conclusions of law, and by referring to ''properties . . . which

*lie on various sides or on any adjacent side*" (italics added) in the disjunctive, it breathes new life into the controversial phrase "lying on various sides," when it should be given a respectable interment. (See *Fobbs* v. *Smith, supra,* 202 Cal. App.2d 209, 214.)

The judgment is reversed. The cause is remanded to the court below with directions to amend its findings in respect to the interpretation of "lying on various sides," to make amended and specific findings on the issues hereinabove referred to in connection with alleged prescriptive rights, and to make conclusions of law and enter judgment in accordance with such revised findings. Let each party bear its own costs.

Sullivan, P. J., and Molinari, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 19, 1965.